# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-01804-COA

**JERRY DARNELL A/K/A JERRY LEE DARNELL**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

DATE OF JUDGMENT:               11/21/2014
TRIAL JUDGE:                    HON. LEE J. HOWARD
COURT FROM WHICH APPEALED:      LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         K. ELIZABETH DAVIS
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY:              FORREST ALLGOOD
NATURE OF THE CASE:             CRIMINAL - FELONY
TRIAL COURT DISPOSITION:        CONVICTED OF AGGRAVATED ASSAULT
                                AND SENTENCED TO TWENTY YEARS IN
                                THE CUSTODY OF THE MISSISSIPPI
                                DEPARTMENT OF CORRECTIONS, WITH
                                FIFTEEN YEARS TO SERVE AND FIVE
                                YEARS SUSPENDED, FOLLOWED BY FIVE
                                YEARS OF POST-RELEASE SUPERVISION
DISPOSITION:                    AFFIRMED – 08/30/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.

### IRVING, P.J., FOR THE COURT:

¶1.     Jerry Darnell was convicted of the aggravated assault of Bernard Harris. The

Lowndes County Circuit Court sentenced him to twenty years in the custody of the

Mississippi Department of Corrections with fifteen years to serve and five years suspended,

followed by five years of post-release supervision. On appeal, Darnell claims: (1) the

evidence was insufficient to convict him; (2) the jury's verdict is contrary to the overwhelming weight of the evidence; (3) he received ineffective assistance of counsel; and (4) his sentence is excessive. Finding no error, we affirm.

FACTS

¶2. Bernard Harris and Tekeshia Jones[1] were in a relationship for approximately a decade and had one child together, Takhia Harris. They broke up, and Jones began dating Darnell. On May 13, 2012, Takhia,[2] called Harris and told him that she was hungry. The next morning, Harris took some snacks to Takhia at school and delivered some groceries to Jones's apartment. Jones's son, Travaro Jones, let Harris into the apartment. Harris was upset that there were only a few groceries in the apartment. Harris had Travaro call Jones, so he could talk to her about the lack of food in the apartment.

¶3. At the time of the call, Jones was riding in a car with Darnell. According to Harris, he was unaware of Jones's relationship with Darnell. However, during the trial, Jones testified that Harris did not talk to her about groceries. Rather, he lashed out at her because she was with Darnell.

¶4. Harris and Darnell eventually spoke on the phone. Both Darnell and Jones testified that Harris threatened them and cursed at them. After learning that Darnell had been spending nights with Jones, Harris took some things from the apartment, including wall art and a television. Before he left, Harris told Travaro that he would be back later that evening

---

[1] At the time the incident occurred, Jones was engaged to Darnell. They later married. For the sake of clarity, we use her former surname.

[2] Takhia was approximately nine years old at the time.

2

to drop off Takhia.

¶5.     According to Jones and Darnell, they, being concerned for their safety, contacted a police officer and informed him that they had received threatening calls from Harris. The officer told them to file a report. So they went to the Lowndes County Sheriff's Department, where they filed a report with Investigator Travis Robertson. When Darnell and Jones returned to her apartment, they discovered the missing items that Harris had taken. They called the sheriff's department, and Master Sergeant Mark McGairty responded. He took their report of the missing items.

¶6.     Around 2:45 p.m., Harris was riding with his girlfriend, Kenyatta Stallings. They picked up Takhia from the bus stop at the entrance to Jones's apartment complex. With Takhia in the car with him, Harris was on his way to Jones's apartment when he encountered Jones and Darnell, who were walking in the opposite direction. After Stallings stopped the car at Harris's instruction, Harris and Takhia got out. The evidence is conflicting as to what happened next.

¶7.     Harris testified that he tried to talk to Jones, but she pointed her finger in his face, so he knocked her hand away. In response, Jones pushed Harris. He then slapped her in the face with an open hand. According to Harris, Darnell immediately started shooting at him. Harris said that the first shot hit him on the left side of the back of his head,[3] and he fell onto

---

[3] Dr. Jan McClanahan, the surgeon who treated Harris, later testified that Harris's head wound was superficial, in that it did no damage to his skull or brain. Dr. McClanahan recorded that the head wound was sustained from behind.

3

Stallings's car.  As he was trying to get into the car, he tried to turn around to find Takhia.[4]

According to Harris, Darnell appeared to be walking toward him while "stead[il]y firing."

Darnell shot Harris again.  The second gunshot wound passed through Harris' hip and lodged

in his abdomen.

¶8.	Jones and Darnell presented a distinctly different version of events.  They said that

Harris punched Jones with a closed fist.  According to Darnell, Harris never said anything

before he "jump[ed] out of the car and haul[ed] off and hit [Jones] dead between the eyes."

Darnell added that Harris was "still hitting her" as she was falling down.  At trial, Jones

testified that Harris knocked her unconscious.  Darnell testified that Harris kept hitting Jones

as she was falling.  According to Darnell, he shot Harris in the leg, and "that got him off"

Jones.  Darnell said that Harris then started moving toward him, so he closed his eyes and

shot Harris again.

¶9.	Stallings drove Harris to the emergency room, where medical providers tended to his

non-fatal wounds.  Darnell said he helped Jones to get up and that he walked her to her

apartment.  Darnell then left.  He was subsequently arrested without incident, although he

had changed shirts and refused to submit to a gunshot-residue test.  Jones testified that she

did not know what had happened during the shooting, but prior to trial she gave two

statements to the contrary.  That is, on the day of the shooting, she told Investigator James

Ferris that she heard gunfire.  The next day, she went to the Lowndes County Sheriff's

_____

[4] Although Jones and Darnell later disputed it, Harris testified that Takhia was in the area during the shooting.  Other witnesses later testified that numerous other children were nearby.

4

Department and gave another statement to Investigator Ferris. In her second statement, Jones said she saw Darnell shoot Harris as Harris was trying to get into the car.

¶10.     Darnell was indicted and charged with aggravated assault. He pleaded not guilty and opted to go to trial. During its case-in-chief, the State called Harris, four eyewitnesses, and two law-enforcement officers. Briefly summarized, the State presented evidence that after Darnell shot Harris the first time, Harris fell onto or in the direction of Stallings's car. And as Harris was trying to get into the car, Darnell continued to shoot at him. There was also testimony that Jones was not knocked unconscious by Harris. Instead, she "was crawling around on the ground . . . like she was searching for something."

¶11.     Darnell called four witnesses. In general, Darnell's theory of the case was that he initially acted to defend Jones and that he shot Harris again in self-defense. Darnell and Jones testified that Harris had been threatening them since the morning of the shooting, so they filed two reports: the first with Investigator Robertson and the second with Master Sergeant McGairty after they found things missing from the apartment. Darnell testified that Master Sergeant McGairty told him to do "whatever he needed to do" to protect himself and Jones; however, Master Sergeant McGairty disputed that.

¶12.     During rebuttal, the State called witnesses who testified that Jones did not have any marks or bruises on her face after the shooting. The State also presented evidence that after Darnell shot Harris the first time, Harris "ran towards the car[,]" and Darnell continued shooting at him." As stated, there was also testimony that Jones was not knocked unconscious. Instead, she was following Darnell's instructions to pick up the shell casings,

and Darnell told her not to call authorities until after he left. The State also called Investigator Ferris, who testified that he took both of Jones's statements. Although Jones had testified that the information in her statements was untrue, Investigator Ferris noted that he read each statement back to Jones before she signed them. Ultimately, the jury found Darnell guilty of aggravated assault. Darnell appeals.

DISCUSSION

### I.  Sufficiency of the Evidence

¶13.    Darnell claims that the evidence is insufficient to support the jury's verdict. However, as discussed below, he is procedurally barred from raising this issue on appeal. After the State rested its case-in-chief, Darnell moved for a directed verdict, and the circuit court denied his motion. Darnell then presented his own case. "When the defendant proceeds with his case after the state rests and the court overrules the defendant's motion for a directed verdict, the defendant [waives] the appeal of [the denial of his motion for a] directed verdict" unless he renews his motion for a directed verdict at the conclusion of all of the evidence. *Holland v. State,* 656 So. 2d 1192, 1197 (Miss. 1995) (internal citations omitted). Darnell never challenged the sufficiency of the evidence again. He did not renew his motion for a directed verdict, request a peremptory instruction, or file a posttrial motion for a judgment notwithstanding the verdict (JNOV). "In the absence of a renewal of the directed[-]verdict [motion], a request for a peremptory instruction, or a motion for a [JNOV, an appellant] has waived the sufficiency error on appeal." *Id.* Consequently, Darnell is procedurally barred from challenging the sufficiency of the evidence on appeal.

## II. Weight of the Evidence

¶14. Next, Darnell claims the jury's verdict is contrary to the overwhelming weight of the evidence. But Darnell did not file a motion for a new trial. As a result, Darnell is also procedurally barred from challenging the weight of the evidence on appeal. *See Price v. State*, 749 So. 2d 1188, 1199 (¶38) (Miss. Ct. App. 1999) ("The matter of evidentiary weight is waived by the failure to move for a new trial.").

## III. Ineffective Assistance of Counsel

¶15. Darnell argues that his trial counsel was ineffective because he failed preserve the issues regarding the sufficiency and weight of the evidence on appeal. The State suggests that Darnell's claim is premature, and it is better suited for a motion for post-conviction relief (PCR). The State is correct that "generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015). As an appellate court, our review is limited to the record, which may be inadequate to fully determine such claims. *Id*. at 423 (¶18). Under those circumstances, "the appropriate procedure is to deny relief, preserving the defendant's right to argue the issue" in a PCR motion. *Id*. But an appellate court may "address an ineffectiveness claim on direct appeal if the presented issues are based on facts fully apparent from the record." *Id*.

¶16. An appellant asserting ineffective assistance of counsel must demonstrate two components:

> First, the [appellant] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed . . . by the Sixth Amendment. Second, the [appellant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [appellant] of a fair trial, a trial whose result is reliable. Unless a[n appellant] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Stated more succinctly, an appellant "must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive [him] of a fair trial." *Dartez*, 177 So. 3d at 423 (¶19). An appellate court examines "the totality of the circumstances to determine whether counsel's efforts were both deficient and prejudicial." *Id*. "There is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. An appellate court will find that counsel's performance was deficient "[o]nly where it is reasonably probable that, but for the attorney's errors, the outcome would have been different." *Id*.

¶17. Essentially, Darnell argues that the circuit court would have granted a motion for JNOV if only his trial counsel had filed such a motion. Alternatively, Darnell suggests that the circuit court would have granted a new trial if his trial counsel would have filed a posttrial motion challenging the weight of the evidence. The Mississippi Supreme Court has reviewed such ineffective-assistance claims on direct appeal, and the record here is adequate for us to review Darnell's claims. In *Holland*, 656 So. 2d at 1198, the Mississippi Supreme Court found that an attorney's performance was deficient when the attorney failed to raise posttrial challenges to the weight or sufficiency of the evidence. The attorney's failure to

raise such challenges was prejudicial to the defendant, because there was insufficient evidence to support the jury's verdict, and there was a reasonable probability that the trial judge would have granted a motion for JNOV. *Id*. In *Parker v. State*, 30 So. 3d 1222, 1235 (¶49) (Miss. 2010), the supreme court also held that an attorney's performance was deficient for failing to raise similar post-trial motions. But based on the evidence presented at trial, there was no indication that the outcome would have been different but for the attorney's deficient performance. *Id*.; *see also Price*, 749 So. 2d at 1199 (¶¶37-38).

¶18. Darnell was convicted of aggravated assault under Mississippi Code Annotated section 97-3-7(2)(a)(ii) (Supp. 2015). The indictment charged Darnell with "unlawfully, willfully, feloniously, purposely[,] and knowingly caus[ing] bodily injury to . . . Harris . . . with a deadly weapon, to-wit: a pistol, by shooting . . . Harris with [the] pistol; without authority of law[,] and not in necessary self[-]defense." Assuming Darnell's counsel had filed a motion for JNOV, the circuit court would have viewed all credible evidence of guilty in the light most favorable to the State. *Stringer v. State*, 131 So. 3d 1182, 1190 (¶32) (Miss. 2014). Viewed in that light, there was ample evidence of Darnell's guilt.

¶19. Harris and other witnesses testified that he fell toward or in the direction of Stallings's car after Darnell shot him the first time, resulting in a superficial head wound. Numerous witnesses said that Darnell was moving toward Harris while shooting at him, and Harris was trying to get away from him. Although Jones later testified differently, the day after the shooting she gave a statement and said that Darnell was still shooting at Harris while Harris was trying to get into Stallings's car. In the light most favorable to the State, there was

9

evidence that Harris was no longer a threat to Jones or Darnell when Darnell shot Harris a second time. In *Cooper v. State*, 911 So. 2d 665, 672 (¶28) (Miss. Ct. App. 2005), this Court upheld a manslaughter conviction where "testimony indicated that [the defendant] acted in self-defense and defense of others, [but other] testimony also indicated that [he] acted unreasonably." Ultimately, "[m]atters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." *Id*. Thus, there is no reasonable probability that the outcome would have been different even if Darnell's trial counsel would have filed a posttrial motion for JNOV. The same is true regarding a hypothetical motion for a new trial, which would require viewing the evidence in the light most favorable to the verdict. *See Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005). Because there is no reasonable probability that the outcome would have been different, Darnell's arguments under this heading fail. Accordingly, we find no merit to this issue.

    *IV.    Length of the Sentence*

¶20. Finally, Darnell argues that his sentence is excessive. His argument is based on his claim that he was acting in self-defense and/or defense of Jones, and Harris was the aggressor. It is well established that "sentencing lies within the sole discretion of the trial court and, generally, will not be disturbed on appeal 'so long as it does not exceed the maximum term allowed by statute.'" *Mosley v. State,* 104 So. 3d 839, 841 (¶10) (Miss. 2012) (quoting *Gibson v. State,* 731 So. 2d 1087, 1097 (¶28) (Miss. 1998)). "However, a sentence that is grossly disproportionate to the crime committed may be reviewed on Eighth Amendment grounds." *Ford v. State,* 975 So. 2d 859, 869 (¶39) (Miss. 2008).

¶21. The maximum sentence for aggravated assault is twenty years in the custody of the MDOC. Miss. Code Ann. § 97-3-2(a). The circuit court sentenced Darnell to twenty years with five years suspended, followed by five years of post-release supervision. Darnell's sentence does not exceed the statutory maximum. Furthermore, "[a]ggravated assault with a deadly weapon is a serious, violent crime." *Ford*, 975 So. 2d at 870 (¶40). A seventeen-year sentence for aggravated assault "does not lead to an inference of 'gross disproportionality.'" *Id*. Likewise, Darnell's sentence is not grossly disproportionate to his crime. We find no merit to this issue.

¶22. **THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIFTEEN YEARS TO SERVE AND FIVE YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**