# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00830-COA

GENORIS WILLIAMSON A/K/A GENO A/K/A                          APPELLANT
GENORIS R. WILLIAMSON

v.

STATE OF MISSISSIPPI                                          APPELLEE

DATE OF JUDGMENT:            06/23/2021
TRIAL JUDGE:                 HON. DEWEY KEY ARTHUR
COURT FROM WHICH APPEALED:   MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      JAMES HOWARD MURPHY
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: LAUREN GABRIELLE CANTRELL
DISTRICT ATTORNEY:           JOHN K. BRAMLETT JR.
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 04/04/2023
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McDONALD AND LAWRENCE, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Genoris Williamson was indicted for his role in two burglaries of a deer camp in
Madison County. Following a jury trial, he was convicted of burglary of a dwelling, burglary
of a shed, and trafficking stolen firearms. On appeal, Williamson challenges the sufficiency
and weight of the evidence related to his conviction for trafficking stolen firearms.
Williamson also argues that the trial judge erred by admitting evidence of other crimes, by
denying his motion to suppress evidence obtained in a search of his residence, by denying
his motion to recuse, by denying his motion for a continuance, and by not halting the trial
during a power outage. For the reasons discussed below, we find no error and affirm.

# FACTS AND PROCEDURAL HISTORY

¶2.     On October 29, 2019, Ed McCraw's deer camp in the unincorporated community of Camden in northern Madison County was burglarized twice. The first burglary occurred in the early afternoon, and the second occurred at night.

¶3.     Around noon, Williamson, Quintavious Davis, and Greg Johnson drove to McCraw's deer camp to case the property because Williamson wanted to burglarize it. Around 3:15 p.m., Williamson and two accomplices[1] returned to the deer camp and burglarized the home and the shed on the property. They stole one or more guns, ammunition, a 60-round drum magazine, trail cameras, and a side-by-side ATV. Williamson loaded the side-by-side with the other stolen property and drove it to a wooded area off Sulphur Springs Road.

¶4.     Latavius Leach testified that sometime after the first burglary, Davis sent him a text message asking if he needed ammunition. Davis told Leach to meet him at the wooded area off Sulphur Springs Road. When Leach arrived, Williamson, Davis, and Travon Carmichael were shooting guns, and they had a side-by-side loaded with numerous cases of ammunition, trail cameras, and other items. Leach testified that the men were shooting three or four guns, including pistols and an assault rifle. Leach asked them where they had obtained "all this stuff," and Davis said, "This dude's house." Leach asked if there was "some more stuff over there." Davis answered, "Yeah . . . . You want to go get some more stuff, like four-wheelers and stuff?" Leach agreed. Leach then drove his car back to his house, and Davis followed him on the side-by-side. Williamson did not go with them to Leach's house.

---

[1] Based on the testimony at trial, it is not entirely clear who accompanied Williamson during the first burglary.

2

¶5.    Leach testified that he and Davis drove the side-by-side to a house on Pat Luckett Road where Kendravious Jobe, DeAngelo Carter, and LaKeith Smith lived. Later that night, Davis, Leach, Carmichael, Jobe, Carter, and Smith returned to the deer camp on the stolen side-by-side. The men then stole a gun safe, more guns, four or five ATVs, two trailers, and other items. They returned to the house on Pat Luckett Road with the stolen property. According to Leach, Williamson was not present during the nighttime burglary.

¶6.    Davis also testified at trial, and certain details of his testimony differed from Leach's testimony. Davis claimed that although he went with Williamson and Johnson to case the deer camp, he did not participate in the first burglary. Davis testified that he went home before the first burglary, and Williamson called him afterward. Williamson told Davis to meet him at the wooded area off Sulphur Springs Road. Davis testified that when he arrived at the wooded area, Williamson, Carmichael, Leach, Johnson, and Jay Nash were already there. Williamson told Davis about the first burglary, described the layout of the deer camp, and told Davis there were more guns, ATVs, and a gun safe at the camp. Williamson also told Davis where he could find keys to reenter the house at the deer camp.

¶7.    Davis testified that he, Carmichael, Leach, and Nash left the wooded area and went to the house on Pat Luckett Road. Later that night, Davis, Carmichael, Leach, Nash, Jobe, Carter, and Smith all returned to the deer camp to burglarize it a second time. They rode on the stolen side-by-side, which Williamson had left with them. They stole the remaining ATVs, additional guns, and the gun safe, which contained antique guns. Then they returned to the house on Pat Luckett Road and divvied up the stolen goods.

3

¶8.     A few days later, Davis went to Williamson's house, and Williamson had "a new gun." When Davis asked Williamson where he had obtained the gun, Williamson said "it wasn't none of [Davis's] business." But Davis knew that the gun was one of the guns in the gun safe he had helped steal from the deer camp. Leach had taken the gun with him following the second burglary, and Davis later learned that Williamson had obtained the gun from Leach. At trial, Davis identified the gun as State's Exhibit 10, a 9mm Ruger Carbine rifle. McCraw also identified the same gun as one of the guns stolen from his camp.

¶9.     McCraw went to his deer camp the day after the burglaries. His barn door was open, and six ATVs, two trailers, trail cameras, and other tools and equipment were missing. In addition, one of the windows of the house on the property was broken. McCraw discovered that his gun safe, numerous cases of ammunition, and numerous guns were missing from the house. He later determined that a total of thirty-two guns had been stolen.

¶10.    McCraw provided the Madison County Sheriff's Department ("MCSD") with VIN numbers and serial numbers for the stolen ATVs and guns. McCraw also provided MCSD with photographs of the burglars from trail cameras on the property. The photos indicated that the first burglary occurred between 3:15 p.m. and 4:10 p.m., and the second burglary occurred between 8:58 p.m. and 12:05 a.m.

¶11.    MCSD later obtained a search warrant for the home on Pat Luckett Road, and officers recovered the stolen ATVs and some of the stolen guns. While that search was in progress, four of the burglars—Leach, Jobe, Carter, and Smith—turned themselves in. All four men identified Williamson as one of their accomplices.

4

¶12. MCSD then obtained an arrest warrant for Williamson and arrested him at his residence. During the arrest, officers noticed ATVs, a trail camera, and a crossbow—all items that had been reported as stolen from McCraw's deer camp or in other recent burglaries of deer camps in the area. MCSD then obtained a search warrant for Williamson's residence and recovered items stolen from McCraw's camp, including the 9mm Ruger Carbine rifle.

¶13. Investigator Russell Kirby interviewed Williamson after his arrest. In a voluntary written statement, Williamson admitted that he "walked on to private property [and] drove a side by side away" to the wooded area on Sulphur Springs Road. Williamson also stated that he "heard [Davis] talking on the phone with [Leach] saying that he wanted to go back over" to the deer camp later. Williamson stated that he overheard Davis and others say that they had stolen guns, trail cameras, a gun safe, and ATVs from the deer camp. Williamson stated that he bought the Ruger Carbine rifle and some trail cameras from Leach for $300. However, Williamson claimed that he did not know that the gun and cameras were stolen. He said that Leach and the others "always had guns so [he] didn't think that the guns [he] bought [were] stolen." During the interview, Williamson identified himself in still photos from McCraw's trail cameras. Williamson also consented to a search of his cell phone. Text messages recovered from Williamson's phone further implicated him in the first burglary.

¶14. A Madison County grand jury indicted Williamson, Davis, and Carmichael for burglary of a dwelling (Count I), grand larceny for the theft of six ATVs (Count II), grand larceny for the theft of two trailers (Count III), burglary of a shed (Count IV), trafficking

5

stolen firearms (Count V), felony malicious mischief (Count VI),[2] and conspiracy to commit burglary of a dwelling (Count VII).

¶15. Williamson's case proceeded to a jury trial. At trial, Williamson claimed that he did not participate in either burglary of McCraw's deer camp. Williamson testified that he met Davis, Leach, Carmichael, and Johnson at the wooded area off Sulphur Springs Road on the afternoon of October 29. They had a side-by-side with "a lot of bullets," and Williamson asked Davis if he could have some of the bullets. After Davis gave Williamson some bullets, Davis said they "had hit a lick," i.e., had stolen the side-by-side and bullets. Williamson testified that he never drove the side-by-side and never went to the deer camp. He testified that he bought the stolen Ruger Carbine rifle and trail cameras from Leach a few days later. Williamson claimed that he did not know that the guns and cameras were stolen. Williamson testified that he confessed to Investigator Kirby and identified himself in photos of the burglars only because Kirby told him he could "call [his] mother and go home" if he confessed and identified himself.

¶16. The jury found Williamson guilty of counts I, IV, and V and not guilty of all remaining counts. The court sentenced Williamson to serve consecutive terms of fifteen years for Count I, three years for Count IV, and twenty years for Count V. Prior to sentencing, Williamson filed a motion to dismiss his conviction for trafficking in stolen firearms, arguing that the State failed to prove that he possessed two stolen firearms. That

---

[2] Count VI was based on damage done to a door on another building on the property.

motion was denied by operation of law.[3]  Williamson appealed.[4]

## ANALYSIS

¶17.    On appeal, Williamson argues that there is insufficient evidence to sustain his conviction for trafficking in stolen firearms (Count V) because the State failed to prove that he possessed more than one stolen firearm.  In the alternative, he argues that he is entitled to a new trial on Count V because the conviction is against the overwhelming weight of the evidence.  Williamson also argues that the trial court erred by admitting evidence of crimes he did not commit, denying his motion to suppress evidence obtained from the search of his residence, denying his motion to recuse, denying his motion for a continuance, and proceeding with the trial during a power outage.  We address these issues in turn.

### I.    Sufficiency and Weight of the Evidence

¶18.    Williamson was convicted of trafficking stolen firearms. Mississippi Code Annotated section 97-37-35(1) (Rev. 2020) provides in relevant part that "[i]t is unlawful for any person knowingly or intentionally to possess, receive, retain, acquire or obtain possession . . . of a stolen firearm . . . ."  Section 97-37-35(3)(c) further provides if "the offender possesses two (2) or more stolen firearms, the offense shall be considered trafficking in stolen firearms punishable by commitment to the Department of Corrections for not less than fifteen (15) years."  On appeal, Williamson argues that the State failed to prove that he possessed *two*

---

[3] The motion was "deemed denied as of the thirtieth (30th) day after the motion was filed."  MRCrP 25.3.  The trial court later entered an order denying the motion.

[4] Williamson filed his notice of appeal while his post-trial motion to dismiss remained pending.  His notice of appeal became effective once his post-trial motion was denied by operation of law.  M.R.A.P. 4(e).

stolen firearms. In the alternative, he argues that he is entitled to a new trial because the jury's verdict is against the overwhelming weight of the evidence on that issue.

¶19. We review a challenge to "the legal sufficiency of the evidence" de novo, but the evidence must be "viewed in a light most favorable to the State." *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). This means that "all credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Id.* "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010). Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all elements of the offense. *Id.*

¶20. We review a trial judge's denial of a motion for a new trial only for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). Our standard of review is deferential because the "trial judge is in the best position to view the trial." *Id.* at 291 (¶18) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶16) (Miss. 2000)). "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped" to rule on a new trial motion. *Id.* at 291-92 (¶18) (quoting *Amiker*, 796 So. 2d at 947 (¶16)).

¶21. When we review a challenge to the weight of the evidence, we also afford great

deference to the jury's verdict. *Little*, 233 So. 3d at 289 (¶1). The jury is the fact-finder, and this Court will not "assume[] the role of juror on appeal." *Id.* As the Supreme Court made clear in *Little*,

> [w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as [an] appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Id.*

¶22. Applying these standards of review, we conclude that the State presented sufficient evidence that Williamson knowingly possessed two or more stolen firearms and that the jury's verdict is not contrary to the overwhelming weight of the evidence. As discussed above, the State recovered a 9mm Ruger Carbine rifle from Williamson's home. McCraw identified the gun as one of the guns stolen from his deer camp. Davis also testified that he saw Williamson with the gun a few days after the burglaries, and Williamson refused to disclose how he had obtained it. Williamson also admitted to Investigator Kirby that he possessed the gun, although he claimed that he bought it from Leach and did not know that it was stolen. Viewing the evidence in the light most favorable to the verdict, a rational juror could have inferred that Williamson either stole the gun himself during the first burglary or later obtained it from Leach and knew that it was stolen.

¶23. In addition, there was sufficient evidence to support a finding that Williamson knowingly possessed at least one other stolen gun. After the first burglary, Williamson sent a series of text messages to others describing items he and his accomplices had taken from

9

the deer camp. Williamson said he had "hit a sweet lick" and had stolen a side-by-side, a large amount of ammunition, and an "Ar." At trial, Leach testified that when he met up with Williamson, Davis, and Carmichael shortly after the first robbery, the men were all shooting guns, including pistols *and an assault rifle*. Based on Williamson's own text message and Leach's testimony, a rational juror could have found that Williamson knowingly possessed a stolen assault rifle in addition to the stolen Ruger.[5]

¶24.    Moreover, the jury was instructed that it could find Williamson guilty for aiding and abetting others in the commission of the charged offenses. *See Milano v. State*, 790 So. 2d 179, 185 (¶21) (Miss. 2001). Thus, the jury could have found that Williamson aided and abetted others in the offense of trafficking stolen firearms by deliberately and voluntarily providing assistance in the commission of the second burglary. *See id.*; *see also Davis v. State*, 586 So. 2d 817, 821 (Miss. 1991) (affirming a conviction for aiding and abetting the possession of stolen guns). The State presented evidence that Williamson instructed his accomplices on the layout of the deer camp and where they could find additional firearms during the second burglary. Williamson also allowed his accomplices to use the side-by-side he had stolen during the first burglary and told them where they could find the keys to the house on the property. The evidence clearly established that a group of Williamson's accomplices returned to the deer camp later the same day and stole numerous guns. Viewing

---

[5] On appeal, Williamson argues that his text message could not have been referring to an assault rifle because he stated that the "the Ar was still in the pack." Williamson argues that a rifle does not come in a "pack." However, based on Leach's testimony and Williamson's own text message, a rational juror could have found that Williamson did indeed knowingly possess a stolen assault rifle. The jury was not bound to accept Williamson's interpretation of the text message.

this evidence in the light most favorable to the State, a rational juror could have found that Williamson deliberately and voluntarily aided and abetted his accomplices' possession of numerous stolen firearms. Thus, a rational juror could have found that Williamson was guilty of trafficking stolen firearms because he aided and abetted in the possession of two or more stolen firearms. Miss. Code Ann. § 97-3-35(1) & (3)(c).

¶25. As noted above, Williamson also argues, in the alternative, that he is entitled to a new trial on Count V because the jury's verdict was contrary to the overwhelming weight of the evidence. Specifically, Williamson argues that Davis's and Leach's testimony is too "contradictory," "self-serving," "weak," and "speculative" to sustain the jury's verdict. This argument fails for two reasons.

¶26. First, the issue is waived because Williamson failed to file a motion for a new trial in the trial court. *See, e.g.*, *Darnell v. State*, 202 So. 3d 281, 285 (¶14) (Miss. Ct. App. 2016) (holding that a defendant is "procedurally barred from challenging the weight of the evidence on appeal" if he "did not file a motion for a new trial"); *Stewart v. State*, 879 So. 2d 1089, 1095 (¶24) (Miss. Ct. App. 2004) ("The matter of evidentiary weight is waived by the failure to move for a new trial.").

¶27. Second, "a conviction may be supported by the testimony of an accomplice, even when it is uncorroborated. We only require that the accomplice's testimony be reasonable and not improbable, self-contradictory or substantially impeached." *Winters v. State*, 449 So. 2d 766, 771 (Miss. 1984) (footnote and citations omitted). Here, the State presented far more than the testimony of a single accomplice. Both Davis and Leach implicated Williamson in

11

the robberies. Furthermore, their testimony was corroborated by Williamson's own written statement and text messages and his possession of the stolen Ruger Carbine rifle. There were certain inconsistencies in the testimony of Davis and Leach—seemingly, each wanted to minimize his own role in the crimes. But considering the totality of the evidence in the light most favorable to the jury's verdict, we cannot say that the verdict was contrary to the overwhelming weight of the evidence.

## II. Evidence of Other Crimes

¶28. Williamson contends that the trial court erred by admitting evidence of crimes in which he did not participate. Specifically, Williamson complains that the trial court admitted photographs of guns recovered from the house on Pat Luckett Road. Williamson argues that those guns were taken during the second burglary of the deer camp. He argues that he played no role in the second burglary and that it was a completely "separate and distinct event." "Our standard of review governing the admission or exclusion of evidence is abuse of discretion." *Grim v. State*, 102 So. 3d 1073, 1078 (¶11) (Miss. 2012).

¶29. Williamson's argument is without merit. Williamson's indictment and trial covered both the first and second burglaries. He was charged with conspiracy to commit burglary and with grand larceny of items (ATVs and trailers) taken during the second burglary. We cannot know why exactly the jury convicted Williamson of some offenses and acquitted him of others. *Culp v. State*, 933 So. 2d 264, 279 (¶47) (Miss. 2005). The jury may have found that Williamson played no role in the second burglary, but the jury's split verdict also could be the result of a "mistake, compromise, or lenity." *Id.* Regardless, the fact that the jury

12

ultimately acquitted Williamson on some charges does not mean that it was error for the trial judge to admit evidence related to those charges. Williamson was validly indicted and tried on charges related to the second burglary, and the State presented sufficient evidence at trial to submit all seven counts to the jury. The fact that the jury acquitted Williamson on some counts does not retroactively establish that it was error—let alone an abuse of discretion—for the trial judge to admit evidence related to those counts. *See Jones v. State*, 316 So. 3d 217, 222-23 (¶¶19-20) (Miss. Ct. App. 2021). Therefore, the trial judge did not abuse his discretion by admitting photos of guns recovered from the house on Pat Luckett Road.

### III. Motion to Suppress

¶30. Williamson next argues that the trial court erred by denying his pretrial motion to suppress evidence seized during the search of his home. Williamson argues that although the State obtained a warrant to search his home, the State did not establish probable cause for the search. Williamson also argues that the warrant failed to specifically describe the evidence to be seized during the search.

¶31. The Mississippi Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized." Miss. Const. art. 3, § 23 (1890). "Section 23 provides greater protections to citizens than does the United States Constitution"[6] and "should be liberally construed in favor of individual citizens and strictly

---

[6] The Fourth Amendment to the United States Constitution similarly provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against

construed against the State." *State v. Woods*, 866 So. 2d 422, 425 (¶9) (Miss. 2003).

¶32.    A "mixed standard of review" applies when the defendant challenges the trial court's denial of a motion to suppress. *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss 2006). "Determinations of . . . probable cause should be reviewed de novo." *Id.* However, we are bound by the trial judge's findings as to the underlying "historical facts" unless those findings are "clearly erroneous." *Id.* In addition, our "[r]eview of the record is not limited to evidence presented to the trial judge at the suppression hearing; this Court may look to the entire record to determine whether the trial judge's findings are supported by substantial evidence." *Galloway v. State*, 122 So. 3d 614, 669 (¶181) (Miss. 2013).

¶33.    This Court has described the probable-cause determination as follows:

> Whether there is probable cause for a search depends on a practical and common-sense assessment of the totality of the circumstances. The decision of the issuing magistrate should not be overly technical but rather should be based on factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The issuing magistrate may consider both the officer's written affidavit and any supplementary oral testimony, including any credible hearsay.

*Holloway v. State*, 282 So. 3d 537, 543 (¶18) (Miss. Ct. App. 2019) (citations and quotation marks omitted). Similarly, the United States Supreme Court has stated,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

14

that probable cause existed.

*Illinois v. Gates,* 462 U.S. 213, 238-39 (1983) (quotation marks, brackets, and ellipsis omitted).

### A.      Probable Cause

¶34.    As noted above, MCSD initially interviewed Leach, Jobe, Carter, and Smith in connection with the deer camp burglaries, and all four men implicated Williamson as a participant.  MCSD then obtained an arrest warrant for Williamson and arrested him at his residence.  At Williamson's residence, the arresting officer noticed several items described in a series of recent deer camp thefts in the area, including ATVs, trail cameras, and a crossbow.[7]  Based on the information he had obtained, Kirby concluded that Williamson was responsible for "several unsolved burglaries in the north end of Madison County," and he obtained a search warrant for Williamson's residence.  Subsequently, following a hearing on Williamson's motion to suppress, the trial judge concluded that the issuing magistrate had probable cause to issue the search warrant.

¶35.    Based on the totality of the circumstances, we conclude the issuing "magistrate had a substantial basis for concluding that probable cause existed," i.e., the evidence indicated "a fair probability that contraband or evidence of a crime [would] be found [at Williamson's residence]."  *Id.*  As the United States Supreme Court explained in *Gates*, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual

---

[7] The ATVs stolen from McCraw had already been recovered from the house on Pat Luckett Road, and there is no evidence that a crossbow was stolen from McCraw's deer camp.  However, ATVs and crossbows had been stolen from other deer camps in the area, and at the time, Williamson was a suspect or person of interest in other burglaries as well.

15

contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232. A judge must make a "practical, common-sense" estimate of the probabilities. *Id.* at 238. "[P]robable cause to arrest does not automatically provide probable cause to search the arrestee's home." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). But "[i]f there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases." *Id.* at 1055-56. In addition, our Supreme Court has held that "[e]vidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence." *Davis v. State*, 660 So. 2d 1228, 1239 (Miss. 1995). The Court specifically recognized that "guns" are a "type[] of evidence likely to be kept in a suspect's residence." *Id.* Here, multiple persons implicated Williamson in the burglaries, and the arresting officer then observed items matching the description of stolen property at Williamson's residence. Based on the totality of the circumstances, there was probable cause to believe that stolen property and other evidence of the crimes would be found at Williamson's residence.

### B. Particularity

¶36. Williamson also argues that the search warrant was invalid because the warrant and underlying affidavit failed to specifically designate or particularly describe the things to be seized. *See* Miss. Const. art. 3, § 23; U.S. Const. amend. IV.

¶37. A valid search warrant "need not be positively specific and definite"; it is "sufficient if the places and things to be searched are designated in such manner that the officer making the search may locate them with reasonable certainty." *Cole v. State*, 237 So. 2d 443, 445

16

(Miss. 1970). In addition, it is important to remember that suppression of evidence is not an appropriate remedy in *every* case in which a search warrant fails to specifically designate the things to be seized. *Sutton v. State*, 238 So. 3d 1150, 1159 (¶35) (Miss. 2018). "The exclusory rule . . . does not apply automatically, as even a search pursuant to an invalid search warrant may be found to be reasonable under the good-faith exception." *Id.* (citing *White v. State*, 842 So. 2d 565, 571 (Miss. 2003); *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). Under the good-faith exception to the exclusory rule, the "determinative" question is *not* "whether the description in the warrant *in fact* was constitutionally adequate." 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4:5(a), at 710 (5th ed. 2012). "Rather, . . . suppression is required because of a particularity defect only if the warrant was 'so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *Id.* (quoting *Leon*, 468 U.S. at 923).

¶38. In *Sutton*, our Supreme Court held that a warrant failed to particularly describe the evidence to be seized when it simply authorized a search for "stolen items." *Sutton*, 238 So. 3d at 1157-58 (¶¶23-29). The Court held that the "description of 'stolen items' was wholly inadequate to inform the officers executing the search as to which items in the . . . house were to be seized." *Id.* at 1157 (¶27).

¶39. This case is materially distinguishable from *Sutton*. The warrant in this case did not simply authorize an open-ended search for "stolen items." Rather, it authorized the seizure of "any physical . . . evidence pertaining to a House Burglary & Grand Larceny investigation,

stolen firearms and/or gloves, masks, flashlights, hooded sweatshirts, [ATVs] and stolen items, and contraband and stolen items associated with house burglary & grand larceny." While the warrant perhaps could have been more precise, it specifically designated key items reported stolen from McCraw's deer camp and in other recent burglaries in the area—stolen firearms and ATVs. In addition, the warrant specifically designated items worn or used by the men photographed burglarizing McCraw's deer camp. A warrant that is sufficiently specific and definite is not invalid or an impermissible "general warrant" just because it includes language authorizing the seizure of additional evidence of the crimes under investigation. *See Andresen v. Maryland*, 427 U.S. 463, 480-82 (1976); *Taylor v. State*, 94 So. 3d 298, 310 (¶¶35-38) (Miss. Ct. App. 2011). We conclude that the warrant here was sufficiently definite and specific to satisfy Section 23 of the Mississippi Constitution and the Fourth Amendment to the United States Constitution. *Cole*, 237 So. 2d at 445. At the very least, the warrant was facially valid, and its description of the items to be seized was not "so facially deficient" as to trigger the exclusionary rule. *Leon*, 468 U.S. at 923. Therefore, the trial judge did not err by denying Williamson's motion to suppress.

### IV. Motion to Recuse

¶40. Williamson next argues that the trial judge erred by not granting his motion to recuse. Williamson's motion was based on statements the judge made during a prior hearing to accept guilty pleas from Smith and Carter. Although the transcript of that hearing is not part of the record in this case, the trial judge acknowledged that he commended Smith and Carter for their acceptance of responsibility for the burglaries. In addition, the trial judge stated that

18

any cooperation or assistance the men provided would be a "mitigating factor," and he understood that they might testify at Williamson's trial. The judge also advised the men that they had the option and right not to testify. The judge therefore stated that he would defer the men's sentencing hearings until after Williamson's trial. Smith and Carter ultimately did not testify at Williamson's trial. On appeal, Williamson asserts that a "reasonable person" with knowledge of the judge's statements "could rightfully conclude that the trial judge believed Williamson to be guilty and promised [Smith and Carter] a more lenient sentence if he was convicted." We disagree.

¶41. We "review[] the denial of a motion to recuse for manifest abuse of discretion." *Batiste v. State*, 337 So. 3d 1013, 1020 (¶15) (Miss. 2022). "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Taylor v. State*, 789 So. 2d 787, 797 (¶43) (Miss. 2001). However, "a litigant contending that a judge's failure to recuse was a manifest abuse of discretion has a heavy burden of proof." *Batiste*, 337 So. 3d at 1020-21 (¶15) (brackets omitted). In addition, the litigant must "overcome the presumption of impartiality that a judge, sworn to administer impartial justice, is qualified and unbiased." *Id.* at 1021 (¶15) (quotation marks omitted).

¶42. The trial judge in this case did not abuse his discretion by denying Williamson's motion to recuse. It is entirely proper for a judge to consider a defendant's acceptance of responsibility and cooperation when sentencing the defendant. Based on the record before us, the trial judge in this case simply stated that he would consider those factors when he sentenced Smith and Carter. Certainly, there is no evidence that the judge coerced either

19

Smith or Carter into testifying against Williamson, and neither man ultimately testified at Williamson's trial. Nor is there any evidence that the judge expressed or implied that he had prejudged Williamson. Williamson fails to meet his heavy burden or overcome the presumption that the trial judge was impartial. *Batiste*, 337 So. 3d at 1020-21 (¶15). Rather, "a reasonable person, knowing all the circumstances, would [not] harbor doubts about [the trial judge's] impartiality." *Taylor*, 789 So. 2d at 797 (¶43).

## V.     Motion to Continue

¶43.    Ross Barnett Jr. entered his appearance as Williamson's trial counsel on March 26, 2021, following the death of Williamson's prior attorney, Jake Ritchey. At that time, trial was scheduled for the week of April 26. On March 29, Barnett filed a motion for a continuance "to get up to speed" on the case, and the court held a hearing on the motion the same day. The trial judge granted the motion in part and denied it in part. The judge stated that he would continue the trial until the week of May 3 but not until the next term of court. On appeal, Williamson claims that the trial judge erred by not granting him a longer continuance. This claim fails for multiple reasons.

¶44.    First, the issue is procedurally barred. Our Supreme Court repeatedly has held that in order to preserve the denial of a continuance for appeal, the issue must be raised in a post-trial motion for a new trial. *Miles v. State*, 249 So. 3d 362, 368 (¶30) (Miss. 2018); *accord, e.g., Shelton v. State*, 853 So. 2d 1171, 1182 (¶38) (Miss. 2003); *Crawford v. State*, 787 So. 2d 1236, 1242 (¶25) (Miss. 2001); *Morgan v. State*, 741 So. 2d 246, 255 (¶24) (Miss. 1999); *Walker v. State*, 671 So. 2d 581, 592 (Miss. 1995); *Metcalf v. State*, 629 So. 2d 558, 562

(Miss. 1993); *Pool v. State*, 483 So. 2d 331, 336 (Miss. 1986); *Jackson v. State*, 423 So. 2d 129, 132 (Miss. 1982); *Harvell v. State*, 281 So. 3d 1024, 1030 (¶18) (Miss Ct. App. 2019). Williamson failed to file a post-trial motion for a new trial raising this issue. Therefore, the issue is waived.

¶45. In any event, the issue is without merit. "It is hornbook law that the grant or denial of a continuance is within the sound discretion of the trial judge." *Fisher v. State*, 532 So. 2d 992, 998 (Miss. 1988). At the hearing on Williamson's motion, the trial judge agreed to push the trial date one week to May 3, 2021, which afforded Williamson's new attorney a total of five weeks to prepare. This case did not involve any technical or complex facts that necessarily required an extended period of time for preparation. In *Fisher*, a prosecution for rape, the Supreme Court held that the trial judge did not abuse his discretion by denying newly appointed trial counsel's motion for a continuance even though counsel was left with only twenty-four days to prepare for trial. *Id.* The Court noted that "[i]n numerous other cases, [it] ha[d] ruled it was not an abuse of discretion to deny continuance even though counsel had had much less time to prepare . . . ." *Id.* (collecting cases). Likewise, we cannot say that the trial judge in this case abused his discretion by granting Williamson's counsel only one additional week (for a total of five weeks) to prepare for trial.

¶46. Moreover, the denial of "a motion for a continuance will not be reversed unless 'manifest injustice' results." *Jackson v. State*, 231 So. 3d 257, 260 (¶15) (Miss. Ct. App. 2017). "The burden of showing manifest injustice is not satisfied by conclusory arguments alone; rather the defendant is required to show concrete facts that demonstrate the particular

21

prejudice to the defense." *Id.* at 264 (¶34) (brackets omitted) (quoting *Stack v. State*, 860 So. 2d 687, 691-92 (¶7) (Miss. 2003)). Here, Williamson fails to show that he was prejudiced in any concrete way by the denial of a longer continuance. Accordingly, for all these reasons, Williamson is not entitled to a new trial based on the denial of a continuance.

## VI. Power Outage

¶47. Finally, Williamson argues that the trial judge erred by not halting the trial during a power outage caused by a storm. During Williamson's testimony, the judge recessed the trial and sent the jury to a "safe room" because there was a "tornado alert," and the lights and air conditioning had gone out in the courtroom. The judge subsequently informed the parties and counsel that it was safe for the jurors to return to the courtroom, but because there were still storms in the area, it was not safe to leave the courthouse. The judge proposed that they "press forward with [Williamson's] testimony" "rather than just have the jury holed up" at the courthouse. The judge suggested that he could "hold a light on" Williamson while he testified. The judge asked if either side objected, and defense counsel and the prosecutor both clearly stated that they had no objections to proceeding with Williamson's testimony. The jury then returned to the courtroom, and the trial resumed. After Williamson completed his testimony, the defense rested, and the State finally rested. The prosecutor then suggested that the jurors be allowed to leave for the day. She said she had "heard some of the jurors say, [']Oh, my gosh, I just want to go home.[']" She was concerned that some of the jurors were inattentive or "falling asleep." The judge agreed and sent the jurors home for the day.

¶48. Despite clearly stating that he had "no objections" to proceeding during the power

22

outage, Williamson now argues that the trial judge committed reversible error by not halting trial until the storms had passed and power was restored. However, Williamson waived this claim by failing to object at trial. *See, e.g.*, *Chase v. State*, 645 So. 2d 829, 835, 848 (Miss. 1994) (holding that a claim is waived and procedurally barred on appeal in the absence of a contemporaneous objection at trial).

¶49.   Williamson argues that we should consider the issue despite his failure to object because the trial judge committed "plain error." But "[p]lain-error review is properly utilized for correcting *obvious* instances of injustice or misapplied law." *Green v. State*, 183 So. 3d 28, 31 (¶6) (Miss. 2016) (quotation marks omitted). Therefore, "in order to determine if plain error has occurred, we must determine if the trial court has deviated from a legal rule, whether that error is plain, clear, or obvious, and whether the error has prejudiced the outcome of the trial." *Id.* (brackets and quotation marks omitted). Accordingly, in the absence of a "clear legal rule" or "any other binding legal authority settling the issue," there can be no "plain error." *Id.* at 32 (¶¶9-10). Here, Williamson cites no precedent or rule of law holding that a trial judge *must* suspend a trial in comparable circumstances even though both the State and the defendant agree that the trial should proceed. Accordingly, we cannot say that the trial judge committed "plain error" by allowing the witness on the stand to finish his testimony during the power outage.

## CONCLUSION

¶50.   The State presented sufficient evidence to sustain Williamson's convictions, the jury's verdict is not contrary to the overwhelming weight of the evidence, and no reversible error

23

occurred in Williamson's trial.[8]

¶51.   **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[8] Williamson also argues that he is entitled to a new trial based on "cumulative error." However, the cumulative error doctrine is inapplicable when, as in this case, the defendant fails to identify any error. *E.g., Morris v. State*, 303 So. 3d 9, 22 n.3 (Miss. Ct. App. 2020).