# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-00816-SCT

**SEDRIC SUTTON a/k/a CEDRIC SUTTON a/k/a SEDRIC QUINTORUS SUTTON**

*v.*

**STATE OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/01/2016 |
| TRIAL JUDGE: | HON. MARGARET CAREY-McCRAY |
| TRIAL COURT ATTORNEYS: | JOHN L. HERZOG |
| | TAKIYAH PERKINS |
| | E. TUCKER GORE |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: BENJAMIN A. SUBER |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LISA L. BLOUNT |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 03/15/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. Sedric Sutton was indicted by a grand jury in Washington County on two counts: (1) possession of a controlled substance with intent to distribute and (2) possession of a firearm by a convicted felon. After a trial by jury, Sutton was convicted on the first count and acquitted on the second. The trial court sentenced Sutton as a habitual offender to fifteen

years in the custody of the Mississippi Department of Corrections. He now appeals his conviction and sentence.

¶2. All of the State's evidence in the case stemmed from an unconstitutional search pursuant to an invalid warrant which failed adequately to describe the property to be seized by the executing officers. Pretrial, the court denied Sutton's motion to suppress the evidence obtained from the search. After review, we reverse Sutton's conviction and sentence and remand the case to the trial court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶3. On July 15, 2014, a confidential informant ("CI") told law-enforcement officers at the Washington County Sheriff's Office that "stolen items" were located at 331 Muscadine Street in Greenville, Mississippi ( "Muscadine house"). Based on the information provided by the CI, Officers Dwight Donham and Charlton Smith prepared an Affidavit for Search Warrant and presented it to Washington County Justice Court Judge Laverne Holmes-Carter. Judge Holmes-Carter issued a search warrant for "stolen items"[1] in the Muscadine house at 331 Muscadine Street in Greenville, Mississippi.

¶4. The same day, law-enforcement officers—including Officer Smith—executed the warrant on the Muscadine house. Upon entering, the officers detained and searched Sedric Sutton. As a result of the search of Sutton and the Muscadine house, the officers found sixty

---

[1]The items to be seized were "particularly described" in the search warrant as "marijuana, cocaine, methamphetamine, stolen items and or any other illegal controlled substances as well as any paraphernalia which reflect the use(s) of, sale(s) of, or proceed(s) of illegal drug transactions." As discussed *infra*, no probable cause existed to issue a warrant for any drug-related items.

pills, $4,995 in cash, a handgun, and two digital scales.

¶5.     While conducting a safety check, Officer Christopher Surf searched Sutton's right, front pocket and discovered sixty small, yellow pills[2] in a clear plastic bag.  Sutton, who testified in his own defense at trial, admitted to possession of the pills but argued that he had them solely for his personal use.

¶6.     Beyond the pills, the officers found additional evidence in the Muscadine house. Officers discovered $4,995 in cash in Sutton's black waist pack.  Officer Smith also discovered a 9 mm handgun in a black holster "located inside the wall in between the threshold of the dining room and the living room area."  Investigator Cedric Adams testified that the handgun was in plain view.  Additionally, Officer Smith found two digital scales—one small and one large—in the dining room.

¶7.     After the officers completed the search, Sutton was taken into custody and charged with possession of a controlled substance under Mississippi Code Section 41-29-139(c)(3)(A)—a misdemeanor, given that he had less than 100 pills.  A Washington County grand jury indicted Sutton as a habitual offender for possession of a controlled substance with intent under Mississippi Code Section 41-29-139(a)(1) and for possession of a firearm by a convicted felon.

¶8.     Pretrial, Sutton moved to suppress the evidence from the execution of the warrant. Sutton attacked the warrant on two separate grounds: (1) that the underlying facts and

_____

[2]At trial, Allison Conville, a forensic scientist with the Mississippi Forensics Laboratory, gave expert testimony that the sixty pills were a Schedule III controlled substance, containing hydrocodone and acetaminophen.

circumstances on which the warrant was based were unreliable and (2) that the warrant failed sufficiently to describe the property to be seized. The trial court held a hearing on Sutton's motion.

¶9. At the hearing, Officer Donham testified that the CI had informed him that the Muscadine house was a warehouse for stolen goods and that he had sold stolen items there. The CI, according to Donham, claimed that he had seen the stolen items in the house two days before the arrest warrant was executed. On cross-examination, Sutton's counsel engaged in the following exchange with Officer Donham:

Q. Now, [the CI] did not give you any specific items whatsoever at Mr. Sutton's address, did he? Isn't that correct?

A. He said there were numerous things there.

Q. Numerous things. A warehouse of stolen stuff?

A. Right.

Q. But he did not give you a single itemized piece of stolen property, did he?

A. No.

Officer Donham also claimed the CI had given him reliable information in the past and that the CI had personal knowledge—unknown to the public—of a number of local, recent house burglaries. Officer Donham recounted that the CI had told him of a residence at which the CI had sold a "Barnett cross bow." Upon visiting the residence, Officer Donham had recovered the crossbow.

¶10. After consideration of the testimony and arguments of counsel, the trial court denied

4

the motion to suppress. From the bench, the trial court explained its finding: "[T]he [c]ourt, having reviewed the underlying facts and circumstances, finds that there is sufficient factual basis presented upon which the magistrate could have verified the v[e]racity or the reliability of the confidential informant." In its written order, the trial court found that the information in the affidavit seeking the warrant "described the things to be seized with sufficient particularity to satisfy [the] Fourth Amendment."

¶11. Sutton was tried before a jury on May 26, 2016. At trial, Sutton stipulated to his status as a felon. The jury found Sutton guilty of the first count, possession with intent, and acquitted him of the second count, possession of a firearm. On June 1, 2016, the trial court sentenced Sutton to a term of fifteen years in the custody of the Mississippi Department of Corrections pursuant to Sections 41-29-139(b)(4)(C) and 99-19-81.[3]

¶12. Sutton now appeals. Sutton, *pro se*, and his counsel raise a number of issues. Because our analysis of the suppression issue is dispositive, we need not address Sutton's other claims of error.

**STANDARD OF REVIEW**

¶13. "'In reviewing a magistrate's finding of probable cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause.'" *Roach v. State*, 7 So. 3d 911 (Miss. 2009) (quoting *Petti v. State*, 666 So. 2d 754, 758 (Miss. 1995)). Our review is guided by

---

[3] Mississippi Code Section 41-29-139(b)(3)(D) (Supp. 2017) allows a maximum sentence of twenty years for Sutton's offense. Section 41-29-139(b)(3)(D) did not become effective until July 1, 2016. 2016 Miss. Laws 482. Thus, Sutton received the maximum sentence of fifteen years under Mississippi Code Section 41-29-139(b)(4)(C) (2014).

the totality-of-the-circumstances analysis established by the United States Supreme Court. *Lee v. State*, 435 So. 2d 674, 676 (Miss. 1983) (citing *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983)). The United States Supreme Court in *Gates* detailed the test:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238–39 (alteration in original) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L. Ed. 2d 697 (1960), *overruled by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980)). In making this determination, "'this Court looks both to the facts and circumstances set forth in the affidavit for search warrant and as well, the sworn oral testimony presented to the issuing magistrate.'" *Petti*, 666 So. 2d at 757 (quoting *Williams v. State*, 583 So. 2d 620, 622 (Miss. 1991)). Further, "[T]he information necessary to establish probable cause 'must be information reasonably leading an officer to believe that, then and there, contraband or evidence material to a criminal investigation would be found.'" *Id.* (quoting *Rooks v. State*, 529 So. 2d 546, 554–55 (Miss.1988)).

## ANALYSIS

### The trial court erred in denying Sutton's motion to suppress.

¶14.    Sutton argues that the trial court erred in denying the motion to suppress the evidence seized in the search.  While we find that the facts and circumstances undergirding the warrant were sufficient to support a determination of probable cause as to "stolen items," we agree with Sutton that the warrant failed adequately to describe the property to be seized.  Thus, we find that Sutton's constitutional rights under both the Mississippi Constitution and the United States Constitution were infringed.

¶15.    The Mississippi Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, *specially designating the place to be searched and the . . . thing to be seized*."  Miss. Const. art. 3, § 23 (1890) (emphasis added).  "Section 23 provides greater protections to citizens than does the United States Constitution [and] . . . should be liberally construed in favor of individual citizens and strictly construed against the State."  ***State v. Woods***, 866 So. 2d 422, 425 (Miss. 2003) (citing ***Graves v. State***, 708 So. 2d 858, 861 (Miss. 1997)).

¶16.    The Fourth Amendment to the United States Constitution provides: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing the . . . things to be seized*."  U.S. Const. amend. IV (emphasis added).  "When evidence is obtained in violation of the Fourth Amendment," the exclusionary rule is implicated.  ***Illinois v. Krull***, 480 U.S. 340, 347, 107 S. Ct. 1160, 1165, 94 L. Ed. 2d 364

(1987). Both the Fourth Amendment and the accompanying exclusionary rule apply to the States "through the Fourteenth Amendment." ***Hudson v. Michigan***, 547 U.S. 586, 590, 126 S. Ct. 2159, 2163, 165 L. Ed. 2d 56 (2006).

**A.  The information supporting the determination of probable cause as to "stolen items" was sufficiently reliable.**

¶17.  Sutton argues that the search warrant was invalid as it was based on underlying facts and circumstances which were not reliable, violating the Fourth Amendment to the U.S. Constitution as well as Article 3, Section 23 of the Mississippi Constitution. After review, we find that this contention is without merit.

¶18.  "A confidential informant's veracity may be demonstrated through 'a statement of the affiant that the confidential informant has given credible information in the past.'" ***Chesney v. State***, 165 So. 3d 498, 505 (Miss. Ct. App. 2015) (quoting ***Peden v. State***, 132 So. 3d 631, 636 (Miss. Ct. App. 2014)); *see also* ***State v. Woods***, 866 So. 2d 422, 426 (Miss. 2003) (recognizing that "[u]sually . . . corroborating evidence consists of a statement that the officer had successfully used the CI in the past.").

¶19.  This Court has determined that a warrant is supported by sufficiently reliable information where the confidential informant has provided reliable information in the past and the informant's reliability can be corroborated independently. ***Roach***, 7 So. 3d at 919. In ***Roach***, the Court recognized that the investigator "described the CI as reliable in the past because he knew him to be a reliable CI used by the department on occasion." ***Id***.

¶20.  Under a totality-of-the-circumstances review, it is evident that there was a substantial basis for Judge Holmes-Carter's determination that the search warrant's language concerning

8

"stolen items" was supported by sufficiently reliable information. The affidavit before Judge Holmes-Carter claimed that the CI had shown Officer Donham "several locations in Washington County where stolen items from recent house burglaries were taken and sold . . . and described details of the burglaries that were not public knowledge." The CI also knew the brand name—Barnett—of a stolen crossbow that Investigator Donham later recovered. According to the affidavit, the informant demonstrated his knowledge of these burglaries on July 15, 2014, the same day that Judge Holmes-Carter issued the arrest warrant.

¶21. Further, as in *Roach*, Officer Donham testified that the CI had provided reliable information to law-enforcement authorities in the past. The following exchange occurred during Donham's examination at the suppression hearing:

> Q. Did you have any contact with that confidential informant before that day?
>
> A. Yes, I did.
>
> . . .
>
> Q. And had he give[n] you reliable information in the past before?
>
> A. Yes, he had.

Investigator Donham also reaffirmed the events recorded in the Affidavit for Search Warrant.

¶22. Given that the CI proved reliable information on the same day that the search warrant was issued and that the CI had given reliable information in the past, the information supporting the warrants was sufficiently reliable. Next, we determine if the warrant itself was valid.

**B.     The search warrant was invalid.**

9

### 1. The warrant did not sufficiently describe the things to be seized.

¶23.   Sutton argues that the search warrant did not adequately describe the property to be seized. After review, we agree.

¶24.   "The description 'stolen property' is no description. For property other than what is illicit or contraband, the thing or things to be seized must be described with some particularity." *Conn v. State*, 170 So. 2d 20, 24 (Miss. 1964) (citing 79 C.J.S. *Searches and Seizures* § 81c (1952)).[4] "'Descriptions in search warrants need not be positively specific and definite, but are sufficient if the places and things to be searched are designated in such a manner that the officer making the search may locate them with reasonable certainty.'" *Barrett v. Miller*, 599 So. 2d 559, 566 (Miss. 1992) (quoting *Hamilton v. State*, 556 So. 2d 685. 689 (Miss. 1990), and *Cole v. State*, 237 So. 2d 443, 445 (Miss. 1970)).

¶25.   At the outset of this analysis, we address the trial court's written order. In it, the trial court cited *Logan v. State*, 773 So. 2d 338 (Miss. 2000), for the proposition that the information in the Affidavit for Search Warrant "described the things to be seized with

---

[4]This statement of law is not unique to Mississippi. *See United States v. LeBron*, 729 F.2d 533, 537 (8th Cir. 1984) (*"*But the general description of 'property . . . believe[d] to be stolen' is not a description of a generic class. In fact, it is not descriptive at all. It is simply conclusory language."); *Martin v. City of Barstow*, 2015 WL 12743595, at *2 (C.D. Cal. July 24, 2015) ("'[S]tolen property' is an objectively non-particular description."); *Thompson v. Superior Court*, 70 Cal. App. 3d 101, 108, 138 Cal. Rptr. 603, 606 (Cal. App. 1977) ("The [State] concede[s] that a general description of 'stolen property' standing alone in a warrant would be constitutionally overbroad because it would enable an officer to engage in an unlimited exploratory search of all personal property and papers situated in the described premises."); *Clark v. Bridges*, 211 F. Supp. 3d 731, 746 (D. S.C. 2016) (There was an "obvious failure of the warrant to describe *any particular thing* that was to be seized [when] [t]he warrant's description of property that is appropriate for seizure merely states [d] 'stolen property' . . . .") (emphasis in original).

10

sufficient particularity to satisfy [the] Fourth Amendment."

¶26.   Upon review, we find that the trial court erred here in this conclusion for a number of reasons.  First, the Affidavit for Search Warrant was not incorporated into the issued search warrant and, therefore, did not describe the items to be seized with any particularity for the executing officers.  Second, even considering the Affidavit for Search Warrant, it does not describe the items to be seized with any more particularity than "stolen items." Third, while the **Logan** Court did not record the specific language at issue in the search warrant, **Logan** is distinguishable from the instant facts as the items sought in that search were particular: ". . . any documents relating to vehicles rebuilt or repaired by Logan at his shop facility. . . ." **Logan**, 773 So. 2d at 344.  Fourth, the  trial court's order did not analyze the description of the things to be seized in the warrant under Article 3, Section 23, of our State Constitution, which has been held to "provide[] greater protections to citizens than . . . the United States Constitution."  **Woods**, 866 So. 2d at 425.

¶27.   With the trial court's order addressed, we now turn to the description of the things to be seized in the warrant.  Here, the description of "stolen items" was wholly inadequate to inform the officers executing the search as to which items in the Muscadine house were to be seized.  The description "stolen items" is even less descriptive than the conclusory description "stolen property."  There simply was no means for the executing officers to distinguish any stolen items from any items that rightfully belonged in the Muscadine house. Indeed, after the search, Sutton had to reclaim a number of his items that were confiscated from the Muscadine house as a result of the warrant's execution.

11

¶28.    Also, despite the claims that the Muscadine house was a "warehouse" for stolen goods, the warrant should have included a more particularized description of at least some of the property to be seized—especially since it is clear from the record that it could have. *See United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir. 1987).  In *Fuccillo*, pursuant to warrants authorizing the seizure of "[c]artons of women's clothing," the FBI seized, among other items, a number of cartons of clothing from several warehouses.  *Id*. at 175.  The defendant moved to suppress all the evidence seized, and the trial court granted the motion. *Id*.  Affirming, the First Circuit noted that "[t]he instant warrants contained no explanation as to how the executing agents were to differentiate cartons of stolen women's clothing from legitimate goods at either location."  *Id*. at 176.  Further, the First Circuit found that "the FBI clearly could have obtained specific information for . . . placement in the warrant which would have enabled the agents executing the . . . warehouse searches to differentiate contraband cartons of women's clothing from legitimate ones."  *Id*. at 176–77.

¶29.    While there are clear distinctions between legitimate warehouses, such as those in *Fuccillo*, and criminal "warehouses," the reasoning undergirding the *Fuccillo* decision provides us guidance.  Here, the Affidavit for Search Warrant provided that the CI had told officers that he "ha[d] been to the [Muscadine house] on numerous occasions and seen stolen items in the residence."  In fact, Officer Donham testified that the CI "had given us information that he had rendered stolen property at that location before.  He had taken stolen property there to dispose of."  Also, the CI demonstrated that he had sufficient memory recall to remember the brand names of certain property that he stole.  The CI recalled that he had

12

stolen a "Barnett" crossbow that later was recovered by Officer Donham. After review of the record, we are convinced that law-enforcement officers could have provided a more detailed description of the things to be seized beyond the conclusory language of "stolen items." As the information was available to them, the officers should have included it in the warrant. Indeed, both the United States Constitution and our State Constitution required them to do so.

### 2. The warrant's drug-related language was not supported by probable cause.

¶30. The search warrant additionally was invalid as there was no substantial basis for the inclusion of the language related to drug activity. While not raised by the parties, upon review, we find that there was no probable cause to issue a search warrant for any illegal drug activity.

¶31. Again, "the information necessary to establish probable cause 'must be information reasonably leading an officer to believe that, then and there, contraband or evidence material to a criminal investigation would be found.'" *Petti*, 666 So. 2d at 757 (quoting *Rooks v. State*, 529 So. 2d 546, 554–55 (Miss. 1988)).

¶32. The warrant listed the drug-related items to be seized, yet the record— pretrial, at trial and on appeal—is devoid of any allegation that either the issuing judge or the officers had reason to believe that the Muscadine house contained drugs. The CI related only activity about theft. Also, at the hearing on the motion to suppress, Investigator Donham did not claim that law-enforcement officers had sought the warrant due to drug-related activity.

¶33. Because the warrant insufficiently describes the stolen goods to be seized and there

13

was no probable cause for any drug-related language to be included in it, the warrant was invalid. The issue now becomes whether the exclusionary rule applies to this case.

### C. The exclusionary rule applies.

¶34. "The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search . . . ." ***Murray v. United States***, 487 U.S. 533, 536, 108 S. Ct. 2529, 2533, 101 L. Ed. 2d 472 (1988); ***Wong Sun v. United States***, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). The United States Supreme Court, in ***Wong Sun***, explained the application of the exclusionary rule:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.

***Wong Sun***, 371 U.S. at 487–88 (internal quotations and citations omitted).

¶35. The exclusionary rule, however, does not apply automatically, as even a search pursuant to an invalid search warrant may be found to be reasonable under the good-faith exception. *See **White v. State***, 842 So. 2d 565, 571 (Miss. 2003); ***United States v. Leon***, 468 U.S. 897, 922–23, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). In ***White***, this Court, quoting the Fifth Circuit, explained the good-faith exception:

> The [United States Supreme] Court has stated that the exclusionary rule should not be applied to suppress evidence if the evidence was obtained by officers acting in objectively reasonable reliance on a subsequently invalidated search warrant. However, this good faith exception does not apply if: (1) in issuing the warrant the magistrate is misled by information in the affidavit that the affiant knows is false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandons his judicial

14

role; (3) the warrant is based on an affidavit so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable; or, (4) the warrant is so facially deficient in failing to particularize the place to be searched and things to be seized that the executing officers cannot reasonably presume it to be valid.

*White v. State*, 842 So. 2d 565, 571 (Miss. 2003) (alteration in original) (quoting *United States v. Russell*, 960 F.2d 421, 423 (5th Cir.1992)) (citing *Leon*, 468 U.S. at 922–23).

¶36. In the present case, we find that the evidence seized pursuant to the invalid warrant cannot "be purged of the primary taint" of the illegal search. As such, the exclusionary rule applies.

¶37. Here too, the warrant was so facially deficient that the executing officers could not have presumed it to be valid. The executing officers did not have any way to distinguish stolen items from property that was not stolen. A reasonable officer who sees a warrant authorizing the seizure of "stolen items" would know that it failed to provide any guidelines for what property was to be seized.

¶38. Also, it is important to reiterate that, under the facts of this case, the inclusion of the drug-related language in the warrant does not somehow validate the search. From the evidence before us in the record, there was no probable cause for the language to be in the warrant.

¶39. Indeed, Officer Smith knew this. He had assisted Officer Donham in the preparation of both the Underlying Facts and Circumstances as well as the Affidavit for Search Warrant. He knew that there was no particular description of the stolen property in the underlying facts or affidavit. He knew a better description was available from the informant. He knew there

15

was no probable cause for the drug language in the warrant. This knowledge, in and of itself, should have raised a red flag as to the validity of the warrant. The good-faith exception is to protect those who act in good faith upon a seemingly valid warrant. It is not to protect those who continue forward with full knowledge of the insufficiencies of the warrant.

¶40. Also of note, the State does not raise the argument on appeal that the search was valid because of the drug-related language. In fact, the State conceded at trial that the search warrant was executed only for "stolen items." Thus, the exclusionary rule applies to this case and prohibits the introduction into evidence of the tangible items seized during the search.

## CONCLUSION

¶41. While the dissent would render judgment in Sutton's favor,[5] we do "not presume to speculate as to the substance of the prosecution's case against" Sutton. *Woods*, 866 So. 2d at 428 (dismissing indictment without prejudice). Had the trial court properly suppressed the evidence in this case, the State may have dismissed the case against Sutton, or it may have offered other evidence that it chose not to use against Sutton in light of the evidentiary ruling. Even though the case may be dismissed against Sutton upon remand, we need not make the

---

[5]The cases cited by the dissent are distinguishable. Four of the cases involve traffic stops where the law-enforcement officer's first encounter with the defendant was unconstitutional. *See Cook v. State*, 159 So. 3d 534, 540–41 (Miss. 2015) (no reasonable suspicion for stop); *Eaddy v. State*, 63 So. 3d 1209, 1216 (Miss. 2011) (same); *Trejo v. State*, 76 So. 3d 684, 690 (Miss. 2011) (same); *White v. State*, 735 So. 2d 221, 224 (Miss. 1999) (unlawful search of automobile). In contrast, Sutton was the subject of an ongoing police investigation, and the search warrant against him was supported by probable cause. The remaining case cited by the dissent also is distinguishable as the dispositive issue there was whether or not the evidence was legally sufficient to support the verdict—not whether or not certain evidence should have been suppressed. *Johnson v. State*, 81 So. 3d 1020, 1023 (Miss. 2011).

final determination here. There has been no representation from the State that its case cannot proceed against Sutton without the suppressed evidence. In fact, Sutton's counsel requested that this Court remand "this case for a new trial." Although we do not make a finding as to the merits of a new trial, we find here that the proper procedure (as we have followed multiple times in analogous circumstances) is to remand to the trial court. *See* **Petti**, 666 So. 2d at 760 (reversing conviction and remanding to the trial court after finding that the only evidence supporting the conviction should have been suppressed); **Conn**, 170 So. 2d at 24 (same).

¶42. Sutton's constitutional right to be free from unreasonable search and seizure was violated by the State. The language "stolen items" failed to describe particularly the things to be seized by the officers executing the search of the Muscadine house. Therefore, we reverse Sutton's conviction of possession with intent to distribute, vacate his sentence and remand this case for further proceedings consistent with this opinion.

¶43. **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., COLEMAN, MAXWELL AND BEAM, JJ., CONCUR. KITCHENS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. ISHEE, J., NOT PARTICIPATING.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶44. I agree with the majority that "[*a*]*ll* of the State's evidence in the case stemmed from an unconstitutional search pursuant to an invalid warrant which failed adequately to describe the property to be seized by the executing officers." Maj. Op. ¶ 2 (emphasis added). Without

the illegally obtained evidence, the State's case fails and there remains no appropriate remedy apart from rendering a judgment in Sutton's favor. Accordingly, I respectfully concur in part and dissent in part.

¶45.    This Court has held repeatedly that, when evidence against a criminal defendant is insufficient to sustain a conviction in the absence of the admission of illegally obtained evidence, the correct remedy is to reverse and render. *See Cook v. State*, 159 So. 3d 534, 541 Miss. 2015) ("Without the evidence gathered as a result of the stop, the evidence against Cook is insufficient to sustain a DUI conviction . . . . As such, we reverse and render a judgment of acquittal."); *Eaddy v. State*, 63 So. 3d 1209, 1216 (Miss. 2011) ("Since the evidence against Eaddy is insufficient to sustain a conviction for possession with intent to distribute without admission of evidence of the illegally obtained cocaine, we reverse and render."); *Johnson v. State*, 81 So. 3d 1020, 1026 (Miss. 2011) ("Because the State failed to present sufficient evidence to support a finding of constructive possession, we reverse the Court of Appeals' and the trial court's decisions and render judgment in favor of Johnson."); *Trejo v. State*, 76 So. 3d 684, 690 (Miss. 2011) ("As noted by the Court of Appeals, '[w]ithout the cocaine, there is no remaining evidence to uphold Trejo's conviction.' Therefore, we affirm the Court of Appeals' judgment to reverse and render Trejo's conviction and sentence."); *White v. State*, 735 So. 2d 221, 224 (Miss. 1999) ("We hold that the search in this case was improper and unlawful. The evidence obtained thereby was 'fruit of the poisonous tree' and therefore inadmissible. Without this evidence, the conviction can not stand.").

¶46. In the present case, had the trial court sustained the defendant's motion to exclude the wrongfully seized evidence, that court also should have dismissed the charge with prejudice, as the State had adduced no other evidence of his guilt. Accordingly, nothing remains for the trial court to do and the proper course for this Court is to reverse and render judgment for the defendant.

**KING, J., JOINS THIS OPINION.**