# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-01342-COA

**RAY CHARLES LENOIR A/K/A RAY LENOIR A/K/A KOOL RAY**                     APPELLANT

**v.**

**STATE OF MISSISSIPPI**                                                   APPELLEE

DATE OF JUDGMENT:                  10/09/2024
TRIAL JUDGE:                       HON. JOHN R. WHITE
COURT FROM WHICH APPEALED:         MONROE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:           OFFICE OF STATE PUBLIC DEFENDER
                                   BY: JUSTIN TAYLOR COOK
                                   RAY CHARLES LENOIR (PRO SE)
ATTORNEY FOR APPELLEE:             OFFICE OF THE ATTORNEY GENERAL
                                   BY: JULIANNE KAY BAILEY
DISTRICT ATTORNEY:                 JOHN WEDDLE
NATURE OF THE CASE:                CRIMINAL - FELONY
DISPOSITION:                       AFFIRMED - 06/02/2026
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Law enforcement recovered methamphetamine and cocaine from a residence in Aberdeen, Mississippi, occupied by Ray Charles Lenoir and his brother. A Monroe County grand jury indicted Lenoir for one count of trafficking a controlled substance (methamphetamine) pursuant to Mississippi Code Annotated sections 41-29-139(c) and 41-29-139(f) (Rev. 2018) (Count I) and possession of a controlled substance (cocaine) pursuant to section 41-29-139 (Count II). Following a jury trial, Lenoir was convicted of both counts. The Monroe County Circuit Court sentenced Lenoir to serve forty years in the custody of the

Mississippi Department of Corrections (MDOC) for Count I, and pursuant to an amended sentencing order, the trial court judge sentenced Lenoir to twenty years suspended and five years of post-release supervision for Count II. The sentences were ordered to run consecutively. After unsuccessfully moving for a judgment notwithstanding the verdict (JNOV) or a new trial, Lenoir appealed.

¶2. The Office of State Public Defender, Indigent Appeals Division, undertook Lenoir's representation. On appeal, the public defender raises two issues, and Lenoir raises three additional issues in his pro se brief, as follows: whether (1) the trial court erred in denying Lenoir's motion to suppress the drugs located at the subject residence; (2) the jury was not properly instructed on constructive possession;[1] (3) the evidence was insufficient to sustain Lenoir's convictions or his convictions are against the overwhelming weight of the evidence; (4) Count I of the indictment improperly charged Lenoir with trafficking; and (5) the trial court's decision to amend Lenoir's sentence for Count II constituted double jeopardy. For the reasons addressed below, we affirm Lenoir's convictions and sentences.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. Lenoir's trial took place on October 8, 2024. The morning before trial began, Lenoir unsuccessfully moved to suppress the drugs and other evidence collected by law enforcement from the residence, asserting that these items were obtained based upon a search warrant that was not supported by probable cause. To avoid repetition, we address the hearing on this motion in detail below.

---

[1] Lenoir also raises the lack of a constructive possession jury instruction in his pro se appellant's brief.

¶4. The State's first witness was Michael Loden, a deputy with the Monroe County Sheriff's Department and a member of the North Mississippi Narcotics Unit task force. After investigation and surveillance of the home located at 603 Clayton Street in Aberdeen, Mississippi, Agent Loden determined that Lenoir lived in the home. For ease of reference, we will refer to the home as Lenoir's residence, although we recognize that during Agent Loden's cross-examination it was brought out that Lenoir's mother held actual title to the home.

¶5. Agent Loden requested a search warrant for the residence on January 18, 2024, and the justice court judge issued the search warrant the same day.[2] The next day, the Monroe County SWAT[3] team went to Lenoir's residence, entered it, and made contact with Lenoir and his brother, James, who were both at the home when the SWAT team arrived. Agent Loden, together with other agents with the North Mississippi Narcotics Unit, then entered the home and conducted a search.

¶6. The agents searched the bedroom that Lenoir identified as his and found "several narcotic items," including suspected "methamphetamine, powder cocaine and crack cocaine." The methamphetamine and powder cocaine were in a "zip-up" leather pouch on the floor in front of the bedside night stand. The crack cocaine was found in a jacket pocket hanging near the night stand.

¶7. Agent Loden testified that several documents in Lenoir's bedroom had his name on

_____

[2] As noted, the details regarding the request for a search warrant and the subsequent hearing on Lenoir's motion to suppress are addressed below.

[3] "Special Weapons and Tactics" team.

3

them, including Lenoir's business card and mail stamped "OFFICIAL LEGAL CORRESPON[D]ENCE - PRIVATE" addressed to Lenoir at the home's address (603 Clayton Street in Aberdeen, Mississippi 39730). The agents also found a prescription pill bottle with Lenoir's name on it. Agent Loden testified that law enforcement searched the entire house. Suspected illegal narcotics were found only in Lenoir's bedroom.

¶8. In the course of his investigation, Agent Loden interviewed Lenoir after advising him of his *Miranda*[4] rights. Lenoir provided a written statement. His statement read: "Today drugs were found at 603 Clayton Dr. Officers arrested me and my brother. I'm now sitting in County Jail. Awaiting for bond. I hope and pray I can get off these drugs before I kill [myself]."

¶9. During cross-examination, Agent Loden acknowledged that he did not know that Lenoir's mother held the actual title to the house located at 603 Clayton Street, and he also acknowledged that no fingerprints were taken off the bags of drugs found on the premises. During his re-direct examination, however, Agent Loden explained that when he testified 603 Clayton Street was Lenoir's residence, he meant that Lenoir lived there. Agent Loden also testified that of the hundreds of narcotics cases he has worked on, none ever had a positive result for fingerprints.

¶10. Forensic scientist Alicia Waldrop testified that testing confirmed the substances found in Lenoir's bedroom were 42.51 grams of methamphetamine, 25.92 grams of powder cocaine, and 3.70 grams of crack cocaine.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶11.   A unanimous jury found Lenoir guilty as charged.  The trial judge sentenced Lenoir to serve forty years in the custody of the MDOC for Count I and twenty years suspended for Count II.  The trial judge ordered that the sentences be served consecutively.  The next day, during the same term of court, the trial judge amended Lenoir's sentence on Count II to twenty years suspended, with five years of post-release supervision.

¶12.   Following the trial court's denial of Lenoir's post-trial motion, Lenoir appealed.

**DISCUSSION**[5]

**DISCUSSION OF ISSUES RAISED BY COUNSEL**

**I.     Probable Cause for Issuance of the Search Warrant**

¶13.   Lenoir asserts that the trial court erred when it failed to suppress the evidence collected by law enforcement from the residence based upon what Lenoir asserts was an invalid search warrant.  According to Lenoir, the search warrant was issued without probable cause because it was "based on the unverified and unreliable observations of a confidential informant," and therefore, the drugs and other evidence obtained during the search were "inadmissible as fruit of the poisonous tree."  We are not persuaded by Lenoir's arguments for the reasons addressed below.

¶14.   Lenoir filed and served his motion to suppress on the morning of trial.  The trial court heard the motion before trial began.  Attached to Lenoir's motion was the search warrant, with Agent Loden's affidavit delineating the "Underlying Facts and Circumstances" establishing grounds for issuance of the search warrant.  In relevant part, Loden's affidavit

---

[5] The applicable standards of review for each issue are discussed in context.

5

provided:

> I, Agent Michael Loden, the undersigned affiant, do hereby swear and affirm to this Honorable Court the following Underlying Facts and Circumstances:
>
> . . . .
>
> That within the past 72 hours, Agents Michael Loden and Warren Smith sent a confidential informant (CI) to Ray Lenoir's residence at 603 Clayton Street in Aberdeen to purchase alleged methamphetamine. CI arrived at the residence, Ray Lenoir came from inside the residence and made contact with the CI in the driveway. Ray Lenoir handed the CI approximately one ounce of alleged methamphetamine and the CI handed Ray Lenoir the U.S. currency that was provided by Agent Warren Smith for the transaction.

¶15. At the hearing, as he does on appeal, Lenoir asserted that in obtaining the search warrant, Agent Loden relied upon a confidential informant who was not reliable, and therefore the search warrant lacked probable cause. The trial judge asked the State's counsel for his response to Lenoir's assertions, and the following exchange transpired:

| | |
|---|---|
| THE COURT: | Response, Mr. Gault? I realize you just got served this. |
| [STATE'S COUNSEL]: | Yes, sir. Of course, understand I am not a witness; however, I would relay to the Court, I think the testimony would be from the narcotic's agents is that the CI was made credible. Again, I can't say that. I would anticipate that would be the testimony. More importantly, . . . [o]ne of the other indicted cases was from a sale made on January 18, I believe at the defendant's residence, which is where the search warrant was executed. Yes, that was a CI. It was also on video. Narcotic's agents did a prebuy meeting to make sure the CI was clean. I think the whole interaction . . . from when the CI left the prebuy and returned to the post-buy meeting, I think was 14 minutes, Your Honor. Of course, only the narcotic[]s officers can— |
| THE COURT: | Testify to that. |

6

| [STATE'S COUNSEL]: | —turn the camera off and could testify. But it was a sale, the basis. Not only had they made several sales or several buys from [] Lenoir, but particularly they had made a buy from him the previous day, January 18. And I think, I don't know if that's 151. I don't have the other files in front of me, but it is one of the indicted sales that's a video sale. And the CI returned to the post-buy location promptly and turned over what at the time was alleged methamphetamine and ultimately was confirmed to be methamphetamine. |
|---|---|

¶16. The trial judge announced that he would hold his decision in abeyance.

¶17. Later that day, however, the trial judge issued his ruling, without resuming the hearing, as follows:

> Having some period of time now to review the motion[] . . . the Court is hereby ready to rule on the defendant's motion to suppress all evidence.
>
> The Court hereby denies the motion to suppress all evidence seized. The reasoning behind that is clear and essentially what [the State's counsel] stated into the record previously. *That is, the basis of the search warrant was not the CI. The basis of the search warrant, as I read it, was information provided by Agents Michael Loden and Warren Smith, not the CI. Those agents indicated what I would call a controlled purchase was made at the residence of Ray Lenoir and requested that a . . . justice court judge[] issue a search warrant as a result and that there was probable cause as a result.* I see nowhere in the affidavit that a CI was relied upon by any judge . . . so it doesn't matter whether the CI was reliable, nonreliable, a[] liar[,] telling the truth, it doesn't matter, the search warrant was issued based on the information provided by an officer, not through a CI, but through personal observations of an officer.

(Emphasis added).

¶18. Article 3, Section 23 of the Mississippi Constitution provides that "[t]he people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause . . . ." Miss. Const. art. 3, § 23; *accord*

U.S. Const. amend. IV. Thus, "[a] search warrant is validly issued when based upon probable cause." *Whittaker v. State*, 269 So. 3d 1226, 1230 (¶16) (Miss. Ct. App. 2018). "[P]robable cause means more than a bare suspicion but less than evidence that would justify condemnation." *Id.* Evidence obtained in violation of Section 23 of the Mississippi Constitution or the Fourth Amendment of the United States Constitution implicates the exclusionary rule, which "prohibits introduction into evidence of tangible materials seized during an unlawful search." *Sutton v. State*, 238 So. 3d 1150, 1159 (¶34) (Miss. 2018).

¶19. The justice court judge in this case found probable cause existed and issued a search warrant to search Lenoir's residence.[6] As such, "[o]ur 'standard of review for this probable cause determination is whether the justice court judge had a substantial basis for concluding that probable cause existed based on the totality of the circumstances.'" *Jackson v. State*, No. 2023-KA-01280-COA, 2025 WL 2046994, at *4 (¶10) (Miss. Ct. App. July 22, 2025) (quoting *Manning v. State*, 726 So. 2d 1152, 1193 (¶170) (Miss. 1998), *overruled on other grounds by Weatherspoon v. State*, 732 So. 2d 158, 162-63 (¶¶12-13) (Miss. 1999)), *cert. denied*, 427 So. 3d 409 (Miss. 2026).

¶20. In making this determination, "[o]ur review is guided by the totality-of-the-circumstances analysis established by the United States Supreme Court." *Sutton*, 238 So. 3d at 1155 (¶13). As the *Sutton* court explained,

> [t]he United States Supreme Court in *Gates* detailed the test:
>
>> The task of the issuing magistrate is simply to make a practical,

---

[6] As noted, we use the phrase "Lenoir's residence" only in the sense that Lenoir lived at the home.

> common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

[*Illinois v.* ]*Gates*, 462 U.S. [213,] 238-39, 103 S. Ct. 2317 (alteration in original) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L.Ed. 2d 697 (1960), overruled by *United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547, 65 L.Ed. 2d 619 (1980)).

*Id.*; *see Ehrhardt v. State*, 376 So. 3d 372, 376 (¶6) (Miss. Ct. App. 2023); *Jackson*, 2025 WL 2046994, at *4 (¶10). In *Sutton*, our Mississippi Supreme Court further explained that "[i]n making this determination, this Court looks both to the facts and circumstances set forth in the affidavit for search warrant and as well, the sworn oral testimony presented to the issuing magistrate." *Sutton*, 238 So. 3d at 1155 (¶13) (internal quotation marks omitted); *Ehrhardt*, 376 So. 3d at 376-77 (¶6).

¶21.    Citing *State v. Woods*, 866 So. 2d 422 (Miss. 2003), Lenoir asserts that when law enforcement uses a confidential informant (CI) to obtain a search warrant, the informant's observations must be shown to be "truthful or reliable." *Id.* at 426 (¶14). In *Woods*, the supreme court found probable cause lacking for the issuance of the search warrant in that case "because the information given to the [Natchez/Adams Metro Narcotics] Unit by the CI was not independently corroborated, because the CI was unknown to the Unit, and because no indicia of veracity or reliability was either included in the affidavit or presented orally to the issuing judge." *Id.* at 427 (¶16). Lenoir asserts the same indicia of reliability is lacking here.

9

¶22.   We disagree.  Unlike the circumstances in *Woods*, the trial judge in the case before us found that the search warrant was issued based on Agent Loden's personal knowledge of a controlled drug buy.  Agent Loden's affidavit specifically provides "[t]hat within the past 72 hours, Agents Michael Loden and Warren Smith sent a confidential informant (CI) to Ray Lenoir's residence at 603 Clayton Street in Aberdeen to purchase alleged methamphetamine."  As Agent Loden's affidavit further provides, this controlled buy resulted in Lenoir selling methamphetamine to the CI.  Based upon the totality of the circumstances, we find that the justice court judge had a "substantial basis . . . for concluding" that there was "a fair probability that contraband . . . [would] be found" at 603 Clayton Street in Aberdeen, Mississippi.  *See Roach v. State*, 7 So. 3d 911, 917, 919 (¶¶11, 17) (Miss. 2009) (recognizing that an agent was "able independently to corroborate the CI's reliability when the controlled buy resulted in [the defendant] selling cocaine to the CI").

¶23.   In any event, even if probable cause for issuing the search warrant arguably did not exist in this case, we point out that "[t]he exclusionary rule . . . does not apply automatically, as even a search pursuant to an invalid search warrant may be found to be reasonable under the good-faith exception."  *Sutton*, 238 So. 3d at 1159 (¶35).

¶24.   As we explained in *Holloway v. State*, 282 So. 3d 537 (Miss. Ct. App. 2019):

> Under the good faith exception to the exclusionary rule, if police officers relied on a facially valid search warrant issued by a neutral and detached magistrate, and the officers' reliance on the warrant was objectively reasonable, a later finding that the warrant was invalid will not require exclusion of the evidence obtained as a result of the search.

*Id.* at 544 (¶21) (internal quotation marks omitted) (citing *White v. State*, 842 So. 2d 565,

10

570-72 (¶¶14-21) (Miss. 2003)). Indeed, "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Jackson*, 2025 WL 2046994, at *6 (¶22) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)).

¶25.    In this case, Lenoir does not even assert that the justice court judge "abandoned his detached and neutral role," that Agent Loden was "dishonest or reckless in preparing [the] affidavit," or that Agent Loden "could not have harbored an objectively reasonable belief" that probable cause existed, and we find no such evidence in the record. As this Court recently recognized, "[i]n most cases, the mere existence of a warrant will be sufficient to show that the officers conducted the search in objectively reasonable (i.e., good faith) reliance on the validity of the warrant." *Id.* (internal quotation marks omitted). As such, "the exclusionary rule will apply [only] if the 'warrant [was] based on an affidavit *so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable*.'" *Id.* at *8 (¶27) (quoting *White*, 842 So. 2d at 572 (¶21)) (emphasis added by *Jackson*). We find no such indication here. Accordingly, we find that even if probable cause was lacking in this case, the exclusionary rule does not apply. Thus, we find that the trial court did not err in denying Lenoir's motion to suppress the drugs and other evidence obtained in the search.

## II.    Constructive Possession Jury Instruction

11

¶26.    Lenoir asserts that his federal and state constitutional rights to a trial by jury[7] were compromised when the jury was not instructed on constructive possession.  For the reasons addressed below, we are not convinced by Lenoir's assertions.

¶27.    "It is well settled that jury instructions generally are within the discretion of the trial court, so the standard of review for the denial of jury instructions is abuse of discretion." *Newell v. State*, 49 So. 3d 66, 73 (¶ 20) (Miss. 2010).  "[We] must read the instructions as a whole to determine if the jury was properly instructed."  *Baxter v. State*, 177 So. 3d 394, 398 (¶7) (Miss. 2015).

¶28.    We further recognize that "[i]t is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element" of the charge against him.  *Harrell v. State*, 134 So. 3d 266, 275 (¶30) (Miss. 2014).  In this case, we find that the jury was instructed on "each and every element" of the crime of possession of the controlled substances at issue.  Therefore, we find that the principle announced in *Harrell* is not implicated here.

¶29.    In particular, Lenoir was charged with trafficking methamphetamine and possession of cocaine in violation of section 41-29-139, which, in relevant part, requires that Lenoir "knowingly or intentionally . . . possess" these controlled substances. *See* Miss. Code Ann. § 41-29-139(c) & (f).  The elements of "possession of a controlled substance" require the State to prove "that the defendant was [(1)] aware of the presence and character of the particular substance and [(2)] was intentionally and consciously in possession of it."  *Sills v.*

---

[7] *See* U.S. Const. art. III, § 2, cl. 3; Miss. Const. art. 3, § 31.

*State*, 359 So. 3d 603, 610 (¶34) (Miss. 2023) (internal quotation mark omitted). In short, "[t]he two essential elements of drug possession are (1) knowledge and (2) possession." *Guss v. State*, 296 So. 3d 734, 737 (¶11) (Miss. Ct. App. 2020).

¶30. The jury was specifically instructed on these two essential elements of drug possession. Namely, the jury was instructed that in order to convict Lenoir of these crimes, they must "find from the evidence in this case beyond a reasonable doubt that RAY CHARLES LENOIR did willfully, unlawfully, knowingly, intentionally and feloniously possess" the subject drugs in the requisite amounts. Although "[p]ossession of a controlled substance may be actual or constructive," *Terry v. State*, 324 So. 3d 753, 755 (¶8) (Miss. 2021), section 41-29-139 prohibits *any* "possession" of a controlled substance. The way in which a defendant "possesses" a particular controlled substance is not an essential element of the crime. Our analysis in *Lepard v. State*, 394 So. 3d 1061 (Miss. Ct. App. 2024), supports our conclusion.

¶31. In *Lepard*, the defendant asserted that jury instructions in his case "were missing an essential element of [the fondling] statute by not stating [that] the touching had to be done 'with hands or any part of his or her body or any member thereof, or with any object.'" *Id.* at 1066 (¶21). We rejected the defendant's contention, concluding that "the fondling statute prohibits *any* touching of a child for a lustful purpose[—but] the method of achieving that touching, while required to be proved beyond . . . a reasonable doubt, is not an essential element for purposes of the jury instructions." *Id.* at 1068-69 (¶29) (emphasis added) (internal quotation marks omitted). Rather, the phrase "with hands or any part of his or her

13

body or any member thereof, or with any object" simply "defines the method of achievement of the illegal handling, touching, or rubbing. As such, . . . that phrase is not the essential element." *Id.* at 1069 (¶29). We find that the same logic applies here. Section 41-29-139 in this case prohibits *any* "possession" of a controlled substance. Thus, the way in which a particular controlled substance is possessed is not an essential element.

¶32. In any event, Lenoir never offered a constructive possession jury instruction or objected to the absence of one. Indeed, at the end of the jury instructions conference, the trial judge specifically asked counsel, "Does everybody believe that . . . [these jury instructions] will adequately instruct the jury as to the elements and the law and what they are to consider? . . . . Do you believe that Mr. Pinkard [(defense counsel)]?" Defense counsel replied, "Yes, Your Honor." Lenoir therefore waived this issue on appeal.

¶33. "Our state's precedent is clear that a defendant who does not make a contemporaneous objection at trial must rely on plain error to raise the assignment on appeal." *Jones v. State*, 411 So. 3d 265, 273 (¶21) (Miss. Ct. App. 2025); *Billups v. State*, 270 So. 3d 917, 922 (¶19) (Miss. Ct. App. 2018) (concluding that defendant's "claim that an advisory jury instruction on constructive possession was required is procedurally barred" where the defendant did not object to the jury instructions provided or "offer to the trial court, for consideration, the jury instruction he now requests in his appeal").

¶34. "In analyzing an issue under plain error review, only an error so fundamental that it creates a miscarriage of justice rises to the level of plain error." *Dewberry v. State*, 407 So. 3d 269, 278 (¶37) (Miss. Ct. App. 2025) (internal quotation mark omitted). To demonstrate

14

plain error, Lenoir "must show that the trial court deviated from a legal rule, that the error is plain, clear, or obvious, and that the error prejudiced the outcome of the trial." *Brady v. State*, 337 So. 3d 218, 227 (¶28) (Miss. 2022). We find that Lenoir has not done so here.

¶35. Applying these requirements, we first note that we find no deviation from a legal rule. Lenoir has cited no precedent requiring that a constructive possession jury instruction be given, and, as discussed above, we find no reversible error in the trial court's failure to provide one. The jury was instructed on the two essential elements of possession and was further instructed that the State had the burden of proving Lenoir's guilt beyond a reasonable doubt; Lenoir was presumed innocent; and Lenoir had no duty to present evidence or testify, and no adverse inference could be drawn against him if he did not do so.

¶36. Additionally, we find that the alleged error did not "prejudice[] the outcome of the trial" because the jury's verdict against Lenoir was not contrary to the overwhelming weight of the evidence presented at trial. We discuss our analysis on this point below. And "[b]ecause the verdict was not contrary to the overwhelming weight of the evidence presented at trial, [Lenoir] cannot show prejudice, a necessary prong of the plain error doctrine." *Spiers v. State*, 361 So. 3d 643, 660 (¶59) (Miss. 2023). For these reasons, we find that no plain error occurred, and, therefore, Lenoir's assignment of error on this issue is without merit.

## DISCUSSION OF ISSUES RAISED BY LENOIR IN PRO SE BRIEF

¶37. After Lenoir's appointed counsel filed an appellant's brief on Lenoir's behalf, Lenoir filed a pro se brief, raising three additional issues. Although the State had received Lenoir's

15

pro se brief months before filing its appellee's brief, the State did not address Lenoir's pro se issues. When faced with this situation, we have recognized that "an appellee's failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. The same rule applies where the appellee files a brief, but fails to address an issue." *Dille v. State*, 334 So. 3d 1162, 1188 (¶71) (Miss. Ct. App. 2021); *see Jordan v. State*, 211 So. 3d 713, 716 (¶11) (Miss. Ct. App. 2016). However, we have also expressly noted that "automatic reversal is not required if this Court can say with confidence that the case should be affirmed." *Dille*, 334 So. 3d at 1188 (¶71). Reviewing the record and the applicable law in this case with respect to the three issues Lenoir raises pro se, "we are confident that we can fairly address [Lenoir's] issues despite the lack of briefing by the State." *Id.*

### III. Sufficiency and Weight of the Evidence to Prove Constructive Possession

¶38. Lenoir asserts, pro se, that the State did not present sufficient proof that he constructively possessed the drugs found in his room. In particular, Lenoir asserts that this is true because he was not in his bedroom at the time the drugs were found there; thus, the State failed to show "proximity." Lenoir also asserts that he lived in the home with his brother, an "ex-convicted drug dealer," who, according to Lenoir, could have also possessed the drugs. For the same reasons, Lenoir asserts that the jury's verdict against him was contrary to the overwhelming weight of the evidence.[8] For the reasons stated below, we find that Lenoir's assertions are without merit.

---

[8] Lenoir raised both of these issues in his pro se "Motion for JNOV or for a New Trial."

16

¶39.   As noted, "[t]he two essential elements of drug possession are (1) knowledge and (2) possession." *Guss*, 296 So. 3d at 737 (¶11).   "With constructive possession, the drug is simply found near the defendant's person in a place over which the defendant exercises dominion and control." *Sills*, 359 So. 3d at 610 (¶35).   Because Lenoir did not actually own the home where the drugs were located, the State was required to "show other incriminating circumstances, in addition to proximity, in order to prove constructive possession." *Lavant v. State*, 281 So. 3d 48, 54 (¶19) (Miss. Ct. App. 2019).

### A.    Sufficiency of the Evidence

¶40.   "[We] review[] whether the evidence is sufficient to sustain a conviction de novo." *Sheely v. State*, 391 So. 3d 186, 191 (¶16) (Miss. 2024).   In doing so, "[a]ll credible evidence [that] is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence." *Burrows v. State*, 961 So. 2d 701, 705 (¶9) (Miss. 2007).   "[T]he relevant question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Collins v. State*, 422 So. 3d 61, 65 (¶11) (Miss. Ct. App. 2025).

¶41.   On the facts before us, we find that the State presented sufficient evidence to sustain Lenoir's convictions.   Agent Loden testified that based upon his investigation and surveillance, Lenoir lived at 603 Clayton Street.   Lenoir points out that both he and his brother James were in the home when law enforcement executed the search warrant.   But "[p]ossession of a controlled substance may be . . . individual or joint," so we do not find that this is a convincing point. *Dixon v. State*, 953 So. 2d 1108, 1112 (¶9) (Miss. 2007).   More

17

importantly, in this case Lenoir told Agent Loden which room in the home was his bedroom. The drugs were found *only* in Lenoir's bedroom. Specifically, Agent Loden testified that the methamphetamine and powder cocaine were found "in a zip-up style pouch [on] the floor in front of a bedside nightstand," and he said the crack cocaine was found in the pocket of a jacket "hanging in a clothing rack next to the nightstand." Photographs depicting the locations of the drugs were admitted into evidence.

¶42. Additional incriminating evidence showed that Lenoir's business card and mail sent to Lenoir at "603 Clayton Street" were found in the same bedroom, together with a prescription pill bottle with Lenoir's name on it. The entire house was searched, but suspected illegal narcotics were found only in Lenoir's bedroom. Further, in Lenoir's written statement, he acknowledged that drugs had been found that day at the residence, and he "hope[d] and pray[ed he could] . . . get off *these* drugs before [he] kill[ed] [himself]." (Emphasis added).

¶43. We find that this evidence is sufficient to prove that Lenoir had "dominion and control" over the drugs and to prove "additional incriminating circumstances" connected Lenoir to those drugs. *See Pegues v. State*, 426 So. 3d 1078, 1086 (¶40) (Miss. 2026) (finding that although defendant did not own home where a weapon was located, State provided sufficient evidence that defendant possessed the weapon where, among other things, defendant testified he stayed in the bedroom where the weapons were located and law enforcement testified that defendant's driver's license and food-stamp card were found in a tote where one weapon was found); *Hopkins v. State*, 141 So. 3d 384, 391 (¶17) (Miss. 2014)

(finding that although defendant did not own home, both testimonial and physical evidence were sufficient to show defendant had "control" over the home even though drugs were found in the living room, a bank card and car title issued to defendant at the home address were found in a bedroom, officers testified that the home address was listed for defendant in the police database, and they had interacted with the defendant numerous times at the home); *Collins*, 422 So. 3d at 66 (¶15) (finding that although defendant's mother owned home and defendant lived there with her, his aunt, and grandmother, there was sufficient evidence to show defendant constructively possessed drugs found in a laundry room where defendant had a sleeping pallet in the laundry room, the drugs were found on top of the pallet, and a glass pipe commonly used to consume controlled substances was also found in the laundry room).

### B.     Overwhelming Weight of the Evidence

¶44.     Relying on the same assertions set forth above, Lenoir alternatively contends that the jury's verdicts were against the overwhelming weight of the evidence. We "review the trial court's decision to grant or deny a new trial for an abuse of discretion." *Mitchell v. State*, 403 So. 3d 110, 117 (¶28) (Miss. Ct. App. 2025) (internal quotation mark omitted). "When reviewing a challenge to the weight of the evidence, this Court considers the evidence in the light most favorable to the verdict, and the State receives all favorable inferences that reasonably may be drawn from the evidence." *Young v. State*, 236 So. 3d 49, 55 (¶22) (Miss. 2017). "[We] will not order a new trial unless [we are] convinced that the verdict so contradicts the overwhelming weight of the evidence that to allow the verdict to stand would

sanction an unconscionable injustice." *Id.*

¶45.   The jury in this case heard and considered the witnesses' testimonies and the evidence presented, including information brought out during Agent Loden's testimony that Lenoir's brother, James, had a prior drug conviction; no fingerprints were taken from the drugs that were found; and Lenoir's mother actually held title to the house located at 603 Clayton Street.  The jury also heard all the testimony and evidence discussed above, as well as Agent Loden's testimony that in the hundreds of narcotics cases he has investigated, they have never had a positive result for fingerprints.  Based on all the evidence before it, the jury convicted Lenoir of trafficking methamphetamine and possession of cocaine.  "[T]he jury is the sole judge of the weight of the evidence and the credibility of the witnesses, and conflicts in the evidence are for the jury to resolve." *Boyd v. State*, 383 So. 3d 1280, 1290 (¶47) (Miss. Ct. App. 2024). "It also is within the jury's province to draw reasonable inferences from facts based on experience and common sense." *Jones v. State*, 252 So. 3d 574, 587 (¶54) (Miss. 2018).  After viewing the evidence in the light most favorable to the jury's verdict, as we must, we find that allowing the jury's guilty verdicts to stand will not "sanction an unconscionable injustice." *Young*, 236 So. 3d at 55 (¶22).

**IV.    Count I of the Indictment—Trafficking of a Controlled Substance**

¶46.   Pursuant to Count I of his indictment, Lenoir was indicted for "trafficking, a violation of . . . section 41-29-139(c) by having in his . . . possession thirty (30) or more grams of the following Schedule II Controlled Substance, Methamphetamine, . . . in violation of section 41-29-139(f)."  Lenoir asserts, pro se, that his indictment for Count I "fail[s] to adequately

20

and sufficiently charge the crime of trafficking methamphetamine." We find Lenoir's assertion without merit.

¶47. Section 41-29-139(f)(2)(C) delineates the penalties for "trafficking in controlled substances," and defines that phrase to include "[a] violation of subsection (c) of this section involving thirty (30) or more grams . . . of a Schedule I or II controlled substance," which includes methamphetamine. *See* Miss. Code Ann. § 41-29-139(f)(2)(C). The referenced "subsection (c) of [41-29-139]" makes it unlawful "for any person knowingly or intentionally to possess any controlled substance" and further provides that "[t]he penalties for any violation of this subsection (c) with respect to a controlled substance classified in Schedules I, II, III, IV or V . . . shall be based on . . . the weight of the controlled substance as set forth herein as appropriate[.]" Accordingly, by the plain terms of the statute, Lenoir's indictment—which identifies both applicable subsections of section 41-29-139, identifies the controlled Schedule II substance (methamphetamine) and identifies the weight of that controlled substance (thirty (30) or more grams)—correctly sets forth the trafficking charge against Lenoir.

## V. Amended Sentence for Count II

¶48. As set forth above, on October 8, 2024, the jury found Lenoir guilty of both Count I (trafficking methamphetamine) and Count II (possession of cocaine). The same day, the trial judge sentenced Lenoir to serve forty years in the custody of the MDOC for Count I and twenty years suspended for Count II, with the sentences set to be served consecutively.

¶49. The next day, the trial judge amended Lenoir's sentence for Count II to twenty years

21

suspended followed by five years of post-release supervision. In doing so, the trial judge expressly pointed out, "I'm still in the term, still in my week of term." Lenoir asserts pro se that the trial judge's amended sentence on Count II constitutes double jeopardy and "should be vacated." We find that Lenoir's assertion is unsupported by the applicable caselaw.

¶50. We recognize that in *Ethridge v. State*, 800 So. 2d 1221 (Miss. Ct. App. 2001), cited by Lenoir, this Court did hold that a resentencing order constituted double jeopardy where the defendant was originally sentenced to serve two seven-year sentences, but after the defendant filed a motion for reconsideration, the trial judge resentenced him to serve two thirty-year sentences. *Etheridge*, 800 So. 2d at 1223, 1226 (¶¶2, 17-18). Relevant here, however, is that in subsequent cases we have distinguished *Etheridge* where—as here—the resentencing occurred "before the expiration of the same term of the court." *Ales v. State*, 921 So. 2d 1284, 1286 (¶9) (Miss. Ct. App. 2006). We explained in *Ales*,

> In *Leverette v. State*, 812 So. 2d 241, 244 (¶11) (Miss. Ct. App. 2002) (quoting *Mississippi Comm'n on Judicial Performance v. Russell*, 691 So. 2d 929, 944 (Miss. 1997)), we stated that "the Supreme Court suggested that a circuit court has 'inherent authority' to alter a sentence until a regular term of court expires." Therefore, the amendment of Ales's sentence was within the jurisdiction of the circuit court. *Ethridge* provides no relief for Ales; the re-sentencing was within the jurisdiction of the court, *since it was done before the expiration of the same term of the court*.

*Id.* (emphasis added).

¶51. Likewise, in *Dunlap v. State*, 70 So. 3d 1140 (Miss. Ct. App. 2011), we rejected the same argument Lenoir advances here, concluding, "What Dunlap fails to recognize is that the circuit judge did not sentence Dunlap a second time for the same crime; instead, the circuit judge exercised his 'inherent authority to alter a sentence until [the] regular term of

court expires.'" *Id.*, at 1143 (¶9) (quoting *Leverette*, 812 So. 2d at 244 (¶11)). "Thus, the re-sentencing did not constitute double jeopardy." *Id.*

¶52. Applying this precedent here, we find that Lenoir's amended sentence, imposing an additional five years of post-release supervision to his sentence for Count II, took place the day after his original sentencing and during the same term of court. Accordingly, it did not constitute double jeopardy.

## CONCLUSION

¶53. Accordingly, we affirm Lenoir's convictions and sentences.

¶54. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND LASSITTER ST. PÉ, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WEDDLE, J., NOT PARTICIPATING.**